Andre C. LAMARQUE et al.

v.

FAIRBANKS CAPITAL CORP. et al.

No. 2005–231–Appeal.

Supreme Court of Rhode Island.

July 31, 2007.

Thomas J. Cronin, Esq., Providence, for Plaintiff Kathy M. Lamarque.

David N. Rosin, Esq, for Defendant Fairbanks Capital Corp.

Justin T. Shay, Esq., for Defendant Anthony P. Ciccarone.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice FLAHERTY, for the Court.

What should be the breadth of a collateral attack on the final judgment in a class action suit entered by a federal court or the court of a sister state? The plaintiff, Kathy M. Lamarque, appeals from a decision of the Superior Court granting summary judgment in favor of the defendants, Fairbanks Capital Corporation (Fairbanks) and Anthony P. Ciccarone (Ciccarone). To support its motion for summary judgment in the Superior Court, Fairbanks argued that the plaintiff's suit was barred by the doctrines of *res judicata* and release. Fairbanks contended that the plaintiff was

an absent member of the class in a class action entitled *Curry v. Fairbanks Capital Corp.*, No. 03–10895–DPW (D.Mass.2003), and that the settlement and final judgment in that litigation barred the prosecution of her case in the state court. The Superior Court agreed with Fairbanks and granted summary judgment in its favor. We affirm.

## I

### Facts and Travel

Kathy M. Lamarque and Andre C. Lamarque,[1] formerly husband and wife, jointly owned property at 96 Narragansett Avenue in West Warwick, Rhode Island (the property).[2] In an effort to assist their son in paying for his college education, Andre and Kathy sought to refinance the property. However, it was agreed between them that Andre would be solely responsible for any loan obligations. In June 1995, Andre and Kathy executed a note to Conti Mortgage Corporation, secured by a mortgage on the real estate.[3] The defendant, Fairbanks, serviced the loan.

Sometime in 2001, a dispute arose about whether certain obligations under the loan agreement were in default. After some unsuccessful negotiations between Kathy and Fairbanks, Fairbanks began foreclosure proceedings on the property. A foreclosure sale was conducted on December 18, 2001, and the property was purchased by defendant Ciccarone.

On January 18, 2002, Kathy and Andre filed suit in the Superior Court for Kent County against Fairbanks and Ciccarone[4] alleging that Fairbanks had illegally foreclosed on the property, had breached an implied contract not to foreclose, and that Fairbanks' actions constituted deceptive trade practices. The complaint requested that the court declare the foreclosure void and award damages for Fairbanks' breach of contract and deceptive trade practices. Fairbanks answered the complaint and the case proceeded to discovery. Ciccarone was included as a defendant merely on the basis of his ownership of the property.[5]

Meanwhile, in early 2003,[6] a consolidated class action, *Curry v. Fairbanks Capital Corp.*, was filed in the United States District Court for the District of Massachusetts (District Court or USDC). Apparently, that case was amicably resolved, and on November 14, 2003, a settlement agreement (settlement agreement) was presented to the court. On May 13, 2004, after a fairness hearing was conducted,[7] a final

---

1. For ease of reference, we will refer to the Lamarques as Kathy and Andre, but we mean no disrespect in doing so.

2. The Lamarques' respective interests in the property stem from their divorce in October 1992.

3. At the time the note was issued, Kathy resided in Texas and Andre remained living at the property. Kathy subsequently moved to Arizona.

4. John S. Brunero III and Nicholas A. Brunero also were named as defendants in the complaint as holders of a mortgage on the property issued by Ciccarone; however, both have been dismissed from this action by stipulation.

5. Significantly, Ciccarone's status as a bona fide purchaser for value has never been disputed by plaintiff. Further, plaintiff has not alleged any wrongdoing on the part of Ciccarone with respect to the purchase of the property.

6. The record is unclear as to the exact date that the *Curry* complaint was filed, however, in his brief, defendant Ciccarone represents that the case was filed on May 16, 2003.

7. After the filing of the settlement agreement, but before the entry of the final order, the court entered an order entitled "Order Preliminarily Approving Class Action Settlement, Conditionally Certifying Class for Settlement Purposes, and With Respect to Notice, Settle-

order was entered certifying the settlement class and approving the settlement (final order).[8] Finally, on May 19, 2004, final judgment was entered in the class action suit (which incorporated the final order) and the underlying claims of any and all class members were dismissed with prejudice on the merits (final judgment).

The Lamarques' Superior Court suit still was pending at that time, and in September 2004, Fairbanks moved for summary judgment on the grounds that the plaintiffs'[9] action was barred by *res judicata* and release because, as absent class members who had not opted out of the class action, they were bound by the judgment in *Curry*. Kathy[10] objected to the motion and argued (1) that her claims were not encompassed by the claims covered in the *Curry* suit, and, therefore, she was not a member who is bound by the judgment in that action; (2) that she was not provided proper notice of either the *Curry* suit or its settlement and, thus, cannot be bound by its judgment; and (3) that, even if she was covered by the class action, her type of claim against Fairbanks was expressly excepted by the District Court from those claims released by the class action settlement.

The hearing justice in the Superior Court ruled against Kathy on all fronts;

she found that plaintiff's claims indeed were covered by the class action suit, that they did not fall under the exception contained in the settlement and incorporated into the final judgment, that she was given adequate notice of the *Curry* class action, and that she therefore was bound by the judgment in that suit under the principles of *res judicata*. Accordingly, the hearing justice granted summary judgment for defendant. Final judgment was entered pursuant to rule 54(b) of the Superior Court Rules of Civil Procedure, and plaintiff timely appealed.[11]

## II

## Standard of Review

■ "In passing on a grant of summary judgment by a justice of the Superior Court, this [C]ourt conducts a *de novo* review." *United Lending Corp. v. City of Providence*, 827 A.2d 626, 631 (R.I.2003). Usually, this standard requires this Court to scrutinize the record to ascertain whether there are "genuine issues of material fact." *See Carlson v. Town of Smithfield*, 723 A.2d 1129, 1131 (R.I.1999). This case, however, presents a pure question of law; there is no dispute about what the relevant facts *are*, but only about the legal consequences that those facts may carry.

ment Hearing and Administration in Each Case" (preliminary order), which, among other things, set the date for the fairness hearing. That hearing was held on May 12, 2004.

8. The class was certified pursuant to Rule 23(b)(1)(A), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure. Moreover, the final order fully incorporated the terms of the settlement agreement.

9. We use the plural here because Andre Lamarque was still a plaintiff in this suit at the time the motion for summary judgment was filed.

10. Andre Lamarque failed to appear or oppose the motion for summary judgment, and

judgment was entered against him. He has not appealed that judgment.

11. Thereafter, Ciccarone also moved for summary judgment on the basis of the *Curry* settlement and judgment. The hearing justice concluded that because the claims against Ciccarone necessarily were linked to the viability of the claims against Fairbanks, summary judgment also must be entered in favor of Ciccarone. Once again, final judgment was entered pursuant to Rule 54(b) of the Superior Court Rules of Civil Procedure, and the plaintiff timely appealed. The plaintiff's appeals were consolidated.

## III

## Analysis

■ "It is beyond cavil that a suit can be barred by the earlier settlement of another suit in either of two ways: res judicata or release." *Nottingham Partners v. Trans-Lux Corp.*, 925 F.2d 29, 31–32 (1st Cir.1991). The plaintiff argues, however, that her suit is not barred by either *res judicata* or release because (1) her claims were not covered by the class action suit; (2) she was not afforded due process in the *Curry* class action because she was not given proper notice of that suit; and, even if she is a member of the *Curry* action, (3) her personal claims against defendant fall into the "Reserved Claims and Defenses" exception laid out in the settlement agreement of the *Curry* suit. Although we are sympathetic to plaintiff's dilemma, we nevertheless must disagree with her arguments. Because plaintiff's first and third arguments are less complex, we address them first.

### A

### Whether plaintiff's claims are covered by the *Curry* class action

■ The plaintiff's Superior Court complaint alleged that defendant violated certain Rhode Island statutory notice requirements and breached an implied contract when it foreclosed on the property. Fur-

ther, she claimed that the actions of defendant constituted deceptive trade practices.[12]

Paragraph 3 of the District Court's final order defines the certified class as:

"All persons, other than Excluded Persons, whose loans were serviced by Fairbanks during the period from January 1, 1999 to December 10, 2003, inclusive, and:

"(a) whose loans were (i) in Default or treated as being in Default by Fairbanks and (A) who incurred or were assessed late fees and/or Default–Related fees including without limitation, fees denominated by Fairbanks as 'corporate advances,' or (B) who were affected by Default–Related conduct; *and/or* (ii) ones in which the Member incurred or was assessed prepayment penalties in Massachusetts, Alabama or West Virginia or in violation of law or contract; or

"(b) who otherwise were affected, or whose loans were otherwise affected, by one of the Covered Practices."

Further, the settlement agreement defines "Default–Related" as:

"[A]ny and all acts, omissions, practices, conduct or behavior by Fairbanks or one of the Fairbanks–Related Parties that was taken at any time with respect to a Serviced Loan that is or ever was in Default or treated by Fairbanks as be-

**12.** More specifically, plaintiff's complaint alleged, among other things, that during 2001 she tendered a check to defendant to bring the mortgage current. That check, she averred, neither was cashed nor deposited, and defendant continued to maintain that the mortgage was in default. In the meantime, she complained, she and defendant were in constant negotiation regarding the status of the loan and that during those negotiations: (1) she tendered monthly payment checks, "which were returned by Fairbanks with the notation that only payment in an amount sufficient to bring the account current would be

accepted;" (2) defendant continually changed the amount that it said was necessary to bring the mortgage current; (3) defendant would "fail to adequately explain to Plaintiffs charges such as 'property preservation fees' and 'statutory interest' that it claimed were necessary to bring the mortgage current;" and (4) defendant erroneously advised her that the mortgage was in dispute status and foreclosure would *not* be initiated until January 2002. These allegations are almost identical to many of those found in the amended consolidated class action complaint in *Curry*.

ing in Default, and, subject to the foregoing, shall include, but not be limited to, those Servicing practices that are the subject of the Consolidated Class Action Complaint, and all related transactions or occurrences or series of transactions or occurrences."

In view of these precisely worded definitions, it is our opinion that plaintiff's claims fall squarely within the class as defined and certified by the USDC. The plaintiff most certainly is a person whose loan was serviced by Fairbanks during the period from January 1, 1999, to December 10, 2003, and who either was in default, or was treated by Fairbanks as being in default, and was affected by the "Default-Related" conduct of Fairbanks as that term was defined by the District Court.

The plaintiff argues, however, that she was not a member of the class because (1) she was technically not a borrower on the loan; (2) she was not listed on the class member list ordered by the District Court; [13] and (3) the release contained in the settlement agreement did not apply to individual property claims such as her Superior Court action, but rather, applied only to other class actions that either were pending at the time of the settlement, or were attempted to be brought in the fu-

ture. These arguments warrant little discussion.

First, the loan documents, signed by Kathy and Andre at the time of execution, list both parties together as "borrower," and thus the documents themselves undercut plaintiff's initial contention. Second, the issue of whether plaintiff falls within the class in *Curry* is governed solely by the definition of the class as certified in the final order.[14] That portion of the settlement agreement calling for the creation of a class member list deals solely with the issue of notice and clearly is not intended to be a definitive or all-inclusive list of possible class members. Thus, in our view, plaintiff's exclusion from the class member list has no bearing on the question of whether her claims fall under the class action umbrella.

Finally, any fair reading of the language of the settlement agreement reveals that the settlement indisputably was intended to encompass individual claims as well as any pending or potential class actions. The section of the settlement agreement entitled *RELEASES* says: "This Release shall specifically apply to bar any dispute about * * * the matters that are within the scope of this Release, *whether, whenever and however such dispute or issue may arise or be raised.*" [15] (Emphasis added.)

---

13. In the *"Administration"* section of the settlement agreement, the District Court ordered that Fairbanks create "a list of Class Members." The court further ordered that the list be given to the Federal Trade Commission (FTC) and to the class action plaintiffs' co-lead counsel so that individual notice might be given to those class members listed. *See infra,* Part III. C. 2. n. 22.

14. Indeed, paragraph 10 of the final order specifies that: "[t]he Court finds that *all* persons within the class definition set forth in paragraph 3 are members of the Class, except those who have validly excluded themselves from the Class in accordance with the requirements of the Settlement Agreement and applicable law * * *." (Emphasis added.)

15. The settlement agreement also defines "Released Claims" as:

> "[C]ollectively, all claims, demands, rights, liabilities, defenses, counterclaims and cross-claims, third-party claims, set-offs, rights of recoupment, and causes of action of every nature and description whatsoever for any losses, damage, harms, injuries, statutory penalties, consequential or incidental damages, punitive damages, or other monetary or non-monetary relief that result, concern or arise from or in connection with (a) the transactions or occurrences or series of transactions or occurrences alleged in the Consolidated Class Action Complaint; (b) the acts or omissions of Fairbanks or of any Fairbanks-

In the face of this language, it cannot seriously be contended that individual claims were beyond the scope of the settlement in the class action suit.

## B

### Whether plaintiff's claims were excepted from the settlement

■ The settlement agreement contains the following provision:

" 'Reserved Claims and Defenses' means the following claims and defenses that are excepted from the Release:

(a) any claims or defenses that a Settlement Class Member asserts, affirmatively or defensively, with respect to Fairbanks' Servicing in an effort to defeat any pending or future real estate foreclosure action (whether judicial or non-judicial), including those related to the Servicing practices covered by this Agreement, shall be unaffected by the Release in connection with such action."

The plaintiff argues that her Superior Court action reasonably may be construed as an effort to defeat a pending foreclosure action and therefore constitutes a reserved claim. However, it is undisputed that plaintiff commenced her Superior Court suit nearly one month *after* the completion of the foreclosure on her property and after the property was conveyed to Ciccarone. Indeed, the very purpose of the action was to request that the court set aside the completed foreclosure and grant plaintiff damages based on defendant's allegedly wrongful conduct. Accordingly, plaintiff's action cannot be considered to be an attack on a *pending* foreclosure under any reasonable interpretation. Rather, the suit sought to undo an already completed, but allegedly illegal foreclosure. We conclude that the language contained in the settlement agreement concerning excepted claims does not apply to plaintiff's suit.

## C

### Whether plaintiff was afforded notice in accord with due process

The plaintiff's final argument concerns the adequacy of the notice given to her in the class action suit. She contends that she cannot, under principles of due process, be bound by the judgment in *Curry* because she was not given adequate notice

Related Party in connection with Fairbanks' Servicing of the Serviced Loans related to the transactions or occurrences or series of transactions or occurrences alleged in the Consolidated Class Action Complaint; (c) Fairbanks' Servicing of a Serviced Loan that ever was in Default or treated by Fairbanks as being in Default; or (d) any charge, assessment or collection of a prepayment charge, fee or penalty in Massachusetts, Alabama or West Virginia, or in violation of law or contract. The Released Claims shall include, without limiting the generality of the foregoing, claims, demands, rights, liabilities, and causes of action that are: known or unknown; matured or unmatured; now existing or coming into existence in the future; at law or in equity; before a local, state or federal court, tribunal, administrative agency, commission, arbitrator or arbitration panel, or other adjudicative body; now liquidated or unliquidated; concealed or hidden; asserted or might have been asserted, provided, however, that such are encompassed by the first sentence of this definition. The Released Claims also shall include, without limiting the generality of the foregoing, all claims, rights and demands under any federal, state or local consumer protection statute or administrative rule or regulation, or under any other state or federal statute, rule, or regulation, or under the common law or contract, provided, however, that such are encompassed by the first sentence of this definition. The Reserved Claims and Defenses shall be a specific exception to the scope of the Released Claims."

with respect to that suit.[16] Conversely, defendant argues that the issue of the adequacy of notice already has been determined by the certifying District Court and that, therefore, it is not susceptible to collateral attack. These arguments, however, merely beg the difficult threshold question: when a party seeks to invoke a prior class action judgment against another party in a foreign court, what scope of review should the latter court employ when it determines whether due process was afforded to the party against whom enforcement is sought? This is an issue of first impression in Rhode Island.

**1**

**Scope of Collateral Review**

■ It has long been established that "[f]ull faith and credit 'generally requires every State to give a judgment at least the res judicata effect which the judgment would be accorded in the State which rendered it.'" *Hospitality Management Associates, Inc. v. Shell Oil Co.*, 356 S.C. 644, 591 S.E.2d 611, 616, *cert. denied*, 543 U.S. 916, 125 S.Ct. 34, 160 L.Ed.2d 200 (2004) (quoting *Durfee v. Duke*, 375 U.S. 106, 109, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963)); *see also* U.S. Const. Art. IV, § 1 ("[F]ull faith and credit shall be given in each state to the * * * judicial Proceedings of every other state."). A class action judgment is no exception. *See Matsushita Electric Industrial Co., v. Epstein*, 516 U.S. 367, 374, 116 S.Ct. 873, 134 L.Ed.2d 6 (1996) ("[A] judgment entered in a class action, like any other judgment entered in a state judicial proceeding, is presumptively entitled to full faith and credit * * *."); *Cooper v. Federal Reserve Bank of Richmond*, 467 U.S. 867, 874, 104 S.Ct. 2794, 81 L.Ed.2d 718 (1984) ("There is of course no

dispute that under elementary principles of prior adjudication a judgment in a properly entertained class action is binding on class members in any subsequent litigation.").

■ It is equally well settled, however, that "a judgment issued without proper personal jurisdiction over an absent party is not entitled to full faith and credit elsewhere and thus has no res judicata effect as to that party." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 805, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985); *see also Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 482, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982) ("A State may not grant preclusive effect in its own courts to a constitutionally infirm judgment, and other state and federal courts are not required to accord full faith and credit to such a judgment."). In other words, a party seeking to avoid the binding effect of a prior judgment is entitled to collaterally attack the judgment on the grounds that the rendering court had no personal jurisdiction over him or her at the time the judgment was rendered.

Collateral attacks on class action judgments, however, present a problem distinct from attacks on other types of judgments. This is so because the process due absent members of a class action suit—necessary to bind them to the judgment—has been a somewhat elusive concept. *See Hansberry v. Lee*, 311 U.S. 32, 41, 61 S.Ct. 115, 85 L.Ed. 22 (1940) ("[T]o an extent not precisely defined by judicial opinion, the judgment in a 'class' or 'representative' suit, to which some members of the class are parties, may bind members of the class or those represented who were not made parties to it."). However, in *Shutts*, the United States Supreme Court set forth some

---

**16.** It is undisputed that plaintiff never was sent individual notice in Texas, Arizona, or

Rhode Island.

rather clear criteria with respect to one particular type of class action—the type at issue in this case: class actions specifically certified under Rule 23(b)(3) of the Federal Rules of Civil Procedure.[17] *Shutts* involved a class action brought in Kansas state court in which the plaintiff class sought to collect interest on royalty payments that they alleged had been illegally delayed by the defendant, a Delaware corporation. *Shutts*, 472 U.S. at 799, 105 S.Ct. 2965. The trial court entered judgment for the plaintiff class, and the Supreme Court of Kansas affirmed, casting aside the defendant's argument that the certifying state court could not adjudicate the claims of absent members of the plaintiff class because there were not sufficient minimum contacts between the state and each of those plaintiffs to meet the criteria for personal jurisdiction under *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The Supreme Court agreed with the Supreme Court of Kansas and held that the Due Process Clause protects an absent class plaintiff "even though that plaintiff may not possess the minimum contacts with the forum which would support personal jurisdiction over a defendant." *Shutts*, 472 U.S. at 811, 105 S.Ct. 2965. Minimal due process, the Court held, *requires that absent class plaintiffs:*

"must receive notice plus an opportunity to be heard and participate in the litigation, whether in person or through counsel. The notice must be the best practicable, 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' * * * The notice should describe the action and the plaintiffs' rights in it. Additionally, we hold that due process requires at a minimum that an absent plaintiff be provided with an opportunity to remove himself from the class by executing and returning an 'opt out' or 'request for exclusion' form to the court. Finally, the Due Process Clause of course requires that the named plaintiff at all times adequately represent the interests of the absent class members." *Id.* at 812, 105 S.Ct. 2965

Thus, with its decision in *Shutts*, the Court effectively hewed a path with respect to the requirements for asserting personal jurisdiction over absent members of a class action suit certified under Rule 23(b)(3).[18] In a nutshell, once the *Shutts*

---

17. Rule 23(b)(3) of the Federal Rules of Civil Procedure says:
   "(b) **Class Actions Maintainable.** An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
   " * * *
   "(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."

18. The Supreme Court was explicit in limiting its holding to only those class actions certified under Fed.R.Civ.P. 23(b)(3), *i.e.* those involving money judgments:
   "Our holding today is limited to those class actions which seek to bind known plaintiffs concerning claims wholly or predominately for money judgments. We intimate no view concerning other types of class actions, such as those seeking equitable relief. Nor, of course, does our discus-

due process requirements are met, all absent members who do not opt out are bound by the judgment in that suit. Significantly, however, the Court's holding in *Shutts* did not directly resolve the narrow issue presented in this case; the extent to which reviewing courts can entertain a collateral attack on a judgment on the grounds that the *Shutts* due process requirements were *not* satisfied by the certifying court in the prior class action.

Although we have not tackled this question before, we note that this is a thorny issue that has pricked many a judicial finger in the past and has not resulted in a uniform disposition by the many federal and state courts that have addressed the issue of collateral review of class action judgments.

On one side of the divide are the courts that agree with the decision in *Epstein v. MCA, Inc.*, 179 F.3d 641 (9th Cir.), *cert. denied*, 528 U.S. 1004, 120 S.Ct. 497, 145 L.Ed.2d 384(1999)(*Epstein III* ), in which the Ninth Circuit held that the extent of collateral review is limited to consideration of "whether the procedures in the prior litigation afforded the party against whom the earlier judgment is asserted a 'full and fair opportunity' to litigate the claim or issue." *Id.* at 649. Citing *Hansberry v.*

*Lee,* 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940), the Ninth Circuit rejected the notion of a broad, merit-based collateral attack and further explained its limited approach saying:

"Simply put, the absent class members' due process right to adequate representation is protected not by collateral review, but by the certifying court initially, and thereafter by appeal within the state system and by direct review in the United States Supreme Court.

"As the Court stated in *Hansberry v. Lee,* 'there has been a failure of due process only in those cases where it cannot be said that **the procedure adopted,** fairly insures the protection of the interests of absent parties who are to be bound by it.'  * * *  Due Process requires that an absent class member's right to adequate representation be protected by the adoption of the appropriate procedures by the certifying court and by the courts that review its determinations; due process does not require collateral second-guessing of those determinations and that review." *Epstein III,* 179 F.3d at 648.[19]

Thus, in its final word on the matter,[20] the Ninth Circuit rejected the contention

---

sion of personal jurisdiction address class actions where the jurisdiction is asserted against a *defendant* class." *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 811–12 n. 3, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985).

**19.** Although the issue presented to the *Epstein III* court dealt only with adequate representation, the court made it clear that its reasoning extended to all aspects of the *Shutts* due process requirements. *See Epstein v. MCA, Inc.,* 179 F.3d 641, 649 (9th Cir.), *cert. denied,* 528 U.S. 1004, 120 S.Ct. 497, 145 L.Ed.2d 384 (1999) ("*Matsushita* itself indicates that broad collateral review of the adequacy of representation (*or of the other due process requirements for binding absent class members* ) is not available.") (emphasis added).

**20.** *Epstein III* is also memorable for the procedural maelstrom from which it evolved. In *Epstein v. MCA, Inc.,* 50 F.3d 644 (9th Cir.1995)(*Epstein I* ), the Ninth Circuit initially reversed a district court's ruling that the Epstein plaintiffs' case was barred by a release contained in the settlement of a class action brought in a Delaware state court. The Ninth Circuit held that the Delaware decision was not entitled to full faith and credit because it impermissibly released exclusively federal claims. The case was appealed to the Supreme Court, where it was reversed and remanded. *Matsushita Electric Industrial Co. v. Epstein,* 516 U.S. 367, 116 S.Ct. 873, 134 L.Ed.2d 6 (1996). On remand, the Ninth Circuit again reversed, and this time held that the Delaware decision was not entitled to full

that *Shutts* and *Kremer* supported an unfettered right to launch a collateral challenge against class action judgments on due process grounds. *Epstein III*, 179 F.3d at 648 ("[N]owhere in *Shutts* did the Court state or imply that where the certifying court makes a determination of the adequacy of representation in accord with *Shutts*, this determination is subject to collateral review."). Instead, the court held that only a "[l]imited collateral review [is] appropriate * * * to consider whether the procedures in the prior litigation afforded the party against whom the earlier judgment is asserted a 'full and fair opportunity' to litigate the claim or issue." *Id.* at 648–49 (quoting *Kremer*, 456 U.S. at 480, 102 S.Ct. 1883).

Approximately four years after *Epstein III* was decided, however, the Second Circuit handed down *Stephenson v. Dow Chemical Co.*, 273 F.3d 249 (2nd Cir.2001), which disagreed with the *Epstein III* reasoning and served as a clarion call for those courts that favor broad, substantive collateral review. In *Stephenson*, two plaintiffs (together with their respective families) sought to avoid the binding effect of a previous class action judgment on the grounds that they were not adequately represented in the previous action. The plaintiffs were two Vietnam War veterans who brought suit for injuries based on their exposure to Agent Orange during the war. However, approximately fifteen years before the litigation initiated by the plaintiffs, a class action involving identical claims had been settled. The defendants argued that the judgment in the previous class action precluded the plaintiffs' suit. The plaintiffs disagreed, however, and argued that because their injuries arose after the depletion of the settlement fund in the earlier class action, they were not adequately represented in that action, and, therefore, could not be bound by the judgment. The Second Circuit explicitly rejected the limited collateral review adopted in *Epstein III*, espousing a much broader scope of collateral attack on class action judgments. Interestingly, that court also cited *Hansberry* and *Shutts* as authority for the proposition that a court may properly hear and adjudicate a collateral attack on the merits of the fairness determination in a prior class action:

"[T]he propriety of a collateral attack such as this is amply supported by precedent. In *Hansberry v. Lee*, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 * * * (1940), the Supreme Court entertained a collateral attack on an Illinois state court class action judgment that purported to bind the plaintiffs. The Court held that class action judgments can only bind absent class members where 'the interests of those not joined are of the same class as the interests of those

faith and credit because the decision violated due process on the basis of inadequate class representation. *Epstein v. MCA, Inc.*, 126 F.3d 1235 (9th Cir.1997) (*Epstein II* ). However, the Ninth Circuit granted rehearing, withdrew *Epstein II*, and substituted the *Epstein III* decision, which affirmed the district court and ultimately gave full faith and credit to the Delaware settlement.

The procedural posture of *Epstein III* is noteworthy because much of the discussion in that opinion centered on the belief that the Supreme Court, in *Matsushita*, necessarily had decided the issue of full faith and credit—

including whether the Delaware judgment was infirm for due process reasons—before reaching the ultimate issue of whether the state court settlement ultimately could release federal claims. *See Epstein III*, 179 F.3d at 645 ("While the [Supreme Court's] explicit consideration in *Matsushita* of the due process requirements to bind absent class members admittedly did not include an express statement that the Delaware judgment in question did not violate due process, that conclusion was logically necessary to the Court's holding.").

who are, and where it is considered that the latter fairly represent the former in the prosecution of the litigation.' *Id.* at 41, 61 S.Ct. 115; * * *; *cf. Phillps Petroleum Co. v. Shutts,* 472 U.S. 797, 805, 105 S.Ct. 2965, 86 L.Ed.2d 628 * * * (1985) ('It is true that a court adjudicating a dispute may not be able to predetermine the res judicata effect of its own judgment.')." *Stephenson,* 273 F.3d at 258.

Relying on its view of collateral attacks on class action judgments, the Second Circuit then undertook a substantive analysis of the merits of the Stephenson plaintiffs' inadequacy of representation challenges, holding that the plaintiffs had not been adequately represented and thus could not be bound by the settlement of the earlier case.

The Supreme Court granted certiorari in *Stephenson* and thus seemed poised to settle the *Epstein/Stephenson* debate once and for all. However, the Supreme Court's decision was issued per curiam and merely vacated the Second Circuit's ruling with respect to some plaintiffs, and summarily affirmed the decision as to the others by an equally divided court. *Dow Chemical Co. v. Stephenson,* 539 U.S. 111, 112, 123 S.Ct. 2161, 156 L.Ed.2d 106 (2003) (Stevens, J., not participating). The issue, thus, was unresolved and remains hotly litigated.

Recently, in *Hospitality Management,* the South Carolina Supreme Court, in a well-reasoned opinion, addressed the issue of whether only a "limited collateral review is required on the *Shutts* due process requirements in a class action case * * *, or whether a broader, merits-oriented review is permitted * * *." *Hospitality Management,* 591 S.E.2d at 618. The court first considered the legal positions advanced in *Stephenson* and *Epstein III* respectively and then discussed the important policy considerations favoring each approach:

"In our opinion, there are important policy considerations favoring both limited and broad collateral review. Certainly, in the specialized context of class action litigation, the significant interests in efficiency and finality favor limited review. If the due process issues are fully and fairly litigated and necessarily decided by the rendering court, then the strong interest in finality militates in favor of an extremely limited collateral review. Without limited review, a nationwide class action could be vulnerable to collateral actions in the 49 other states in which it was not litigated initially. It would seem to be a waste of judicial resources to require reviewing courts to conduct an extensive substantive review when one has already been undertaken in a sister state. As the Ohio court stated in *Fine v. America Online:* 'To allow substantive collateral attacks would be counterintuitive to [the] procedural relief that a class-action suit is intended to afford our judicial system nationwide.' 743 N.E.2d at 421–22.

"On the other hand, there is the fundamental interest in not allowing constitutionally infirm judgments to be enforced. It would be troublesome to enforce a class action settlement against parties over whom the rendering court did not have personal jurisdiction." *Hospitality Management,* 591 S.E.2d at 619.

After considering the import of these competing policies, the South Carolina court concurred with *Epstein III* and held that "second-guessing the fully litigated decisions of our sister courts would violate the spirit of full faith and credit." *Id.* The court noted that *Epstein III* "envisions that direct appellate review of a class ac-

tion is the appropriate vehicle to correct whatever errors may have been made at the trial court level." *Id.*

■ We find the reasoning in *Epstein III* and *Hospitality Management* to be persuasive. The due process rights of absent class members are protected by the adoption of appropriate procedures by the certifying court, and, thereafter, by appellate review. Allowing broad collateral attacks on final judgments entered in class action suits would, in our view, undermine the important goals of efficiency and finality in which the class action law suit finds its genesis. *See Hansberry,* 311 U.S. at 41, 61 S.Ct. 115 ("The class suit was an invention of equity to enable it to proceed to a decree in suits where the number of those interested in the subject of the litigation is so great that their joinder as parties in conformity to the usual rules of procedure is impracticable."). We therefore hold that when an absent class member seeks to challenge the binding effect of a class action judgment on due process grounds, the scope of our review is limited to a determination of whether appropriate procedures were adopted by the certifying court to insure that due process was afforded.

## 2
### Application of the limited view

■ In *Hospitality Management,* the court aptly summed up the practical application of the *Epstein III* approach:

"what this limited review entails is 'an examination of procedural due process and nothing more.' * * * More specifically, we must determine (1) whether there were safeguards in place to guarantee sufficient notice and adequate representation; and (2) whether such safeguards were, in fact, applied." *Hospitality Management,* 591 S.E.2d at 619.

We therefore undertake an analysis of the facts of this case under this two-prong test.

■ In our opinion, the District Court in *Curry* had adequate safeguards in place to guarantee sufficient notice to all class members.[21] The court ordered that a list of class members be made from Fairbanks' computer databank, checked against the National Change of Address database, and that individual mailings be sent to everyone on the list. The certifying court further ordered that summary notice be published in an apparent effort to reach any class member who did not get an individual mailing.[22] The notices were appropri-

---

**21.** The plaintiff does not challenge the adequacy of representation in the class action suit, and therefore our analysis is strictly limited to the issue of notice.

**22.** In the *"Administration "* section of the settlement agreement, the District Court ordered:

"1. Within twenty (20) business days after the Preliminary Approval Date, or such other later date as may be consistent with the FTC Order, Fairbanks shall create a list of Class Members ('Class Member List'). In preparing the Class Member List, Fairbanks shall use information obtainable from its readily searchable computer media, and shall update all addresses by use of the National Change of Address ('NCOA') data-

base. Fairbanks shall have no further obligation to locate Class Members or Settlement Class Members. Co–Lead Counsel will have access to the Class Member List after it is created, solely for purposes of ensuring that the List is correct and this paragraph was complied with by Fairbanks."

"2. FTC and Co–Lead Counsel shall cause the Notice, with Claim Form, to be mailed, as soon as practicable after entry of the preliminary approval order, to the address for the Class Member on the Class Member List and, if returned, re-mailed once to any forwarding address on the returned notice. There shall be no further obligation to re-mail Notices.

ately drafted and adequately notified class members of the existence of the suit and settlement, the types of claims covered by it, and the right to opt out of the suit, including instructions and deadlines. The court also appointed a settlement administrator to assist in the administration of the settlement.

Moreover, after a fairness hearing was conducted,[23] the District Court held that the notice procedure it had ordered had been complied with and that "[it] was the best notice practicable under the circumstances and satisfie[d] the requirements of due process and Fed.R.Civ.P. 23(c)."[24] Based on our review of the record, we conclude that the issue of the propriety of the notice procedures, including defen-

dant's compliance with them, was fully and fairly litigated in the District Court. Significantly, plaintiff has presented no evidence showing any infirmity with the notice procedure either in the mandate itself or in the manner with which it was complied.[25]

The plaintiff argues, however, that under *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), she was entitled to notice individually addressed and mailed to her because she is a "class member[] whose name[] and address[] may be ascertained through reasonable effort." However, our review of the *Curry* judgment is closely cabined, and we are restricted to a search for procedural error only.[26] To respond to

"3. The Settlement Administrator shall cause the Summary Notice to be published in the national edition of the USA Today twice during the four weeks following initial mailing of the Notice. The two publications will be separated by at least seven days. The size of the Summary Notice shall be such that the cost for publication on each occasion shall not exceed $30,000, unless otherwise ordered by the Court."

**23.** In paragraph 17 of the preliminary order, the District Court ordered that:

"A hearing (the 'Fairness Hearing') shall be held * * * in the United States District Court for the District of Massachusetts * * *. At the Fairness Hearing, the Court will consider: the fairness, reasonableness and adequacy of the proposed Settlement; the entry of any final order or judgment in the case; petitions for attorneys' fees and for reimbursement of expenses by Class Counsel, and other related matters."

Paragraph 12 of that same order further required that:

"Prior to the Fairness Hearing, Co–Lead Counsel shall serve and file a sworn statement of the Settlement Administrator, or other person with knowledge, evidencing compliance with the provisions of this Order concerning the mailing of the Notice and the publication of the Summary Notice."

Finally, paragraph 2 of the *"Final Approval"* section of the settlement agreement says:

"[a]t the Fairness Hearing, Plaintiffs and Class Counsel shall present sufficient evidence to support the entry of the Final Approval Order and Judgment to obtain the approval of this Agreement, and to obtain the approval of the Settlement." Unfortunately, neither party has submitted a transcript of the *Curry* fairness hearing in this case.

**24.** The final order says, in relevant part:

"4. The Court finds that notice was previously given to all members of the Class in the Curry Action and that the notice was the best notice practicable under the circumstances and satisfies the requirements of due process and Fed.R.Civ.P. 23(c)."

**25.** Even under the limited view espoused in *Epstein III*, plaintiff might have been able to avoid the effect of the *Curry* judgment if she had demonstrated either that the order itself was defective because it was inadequately drafted to insure that due process would be afforded to all class members, or that Fairbanks failed to appropriately follow the instructions of the District Court, thus undercutting the protections embodied in the order. No such evidence, however, ever was presented.

**26.** We would add that, despite our holding today, which is based solely upon our understanding of what the appropriate scope of review should be, we nonetheless have very

the plaintiff's argument, an inquiry well beyond the bounds of the narrow scope of review that we have adopted would be required. Although we recognize that this is a rigid and exacting test,[27] we believe that because of the limited scope of our review, the plaintiff's argument should be addressed to the USDC that rendered the judgment.

## IV

### Conclusion

For the reasons stated in this opinion, we affirm the judgment of the Superior Court and return the record of this case to that tribunal.

Justice ROBINSON, dissenting.

In my view, the approach which calls for "[l]imited collateral review"[28] of a foreign class action judgment, which approach this Court has now adopted, is too deferential to the fairness determination made by the class action court; it is insufficiently respectful of the right of the individual litigant to question *in the court of his or her initial choosing* (i.e., the forum court) the adequacy of the notice, if any, that was given to that litigant in the context of a class action proceeding in a foreign jurisdiction. It is my view that the approach which allows for broad collateral review[29] of the foreign judgment from a due process perspective is far more consistent with traditional American jurisprudence regarding every person's fundamental due process right to notice.[30] I believe that the court of the litigant's initial choosing should be empowered to inquire as to the due process foundation of the foreign class action judgment that is introduced for the

grave concerns about why Kathy Lamarque was not sent individual notice in the *Curry* suit. She was listed as a borrower on the same mortgage as Andre Lamarque, and it is undisputed that he was mailed individual notice.

**27.** We feel compelled to question the way that defendant and defendant's counsel have handled plaintiff's conundrum regarding the preclusive effect of the *Curry* suit. Indeed, defendant's, and defense counsel's, actions are questionable if not odious.

The record indicates that on December 10, 2003, nearly four months before the date that requests for exclusion were due from those class members who might choose to opt out of the settlement, a preliminary injunction was ordered by the District Court in *Curry* restraining class members "from commencing or prosecuting any suit against the Released Persons with respect to the matters within the scope of the Release in th[e] [Settlement] Agreement." We have little doubt that this preliminary injunction would have enjoined the present action, and, had defendant immediately moved for dismissal of this suit based on this injunction, plaintiff would have had actual notice of the pending *Curry* settlement and her right to opt out of it—thus

avoiding the harsh result brought about by our decision today. However, defendant did not move to dismiss plaintiff's cause immediately after the entry of the preliminary injunction, and instead waited until September 24, 2004, long after the opt-out deadline, to move for summary judgment based on *res judicata*. This may well be a strange coincidence, but if it is the product of strategy, this series of events is indicative of sharp and unseemly practice and falls woefully short of what this Court expects of the attorneys who practice in this jurisdiction.

**28.** *Epstein v. MCA, Inc.,* 179 F.3d 641, 648–49 (9th Cir.), *cert. denied,* 528 U.S. 1004, 120 S.Ct. 497, 145 L.Ed.2d 384 (1999); *see also Hospitality Management Associates, Inc. v. Shell Oil Co.,* 356 S.C. 644, 591 S.E.2d 611 (2004).

**29.** *See, e.g., Stephenson v. Dow Chemical Co.,* 273 F.3d 249 (2nd Cir.2001), *aff'd in pertinent part by an equally divided Court,* 539 U.S. 111, 123 S.Ct. 2161, 156 L.Ed.2d 106 (2003).

**30.** *See, e.g., Jones v. Flowers,* 547 U.S. 220, 126 S.Ct. 1708, 164 L.Ed.2d 415 (2006); *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

purpose of ousting the forum court's jurisdiction pursuant to the doctrine of *res judicata.*[31] However, in view of the fact that my colleagues have reached a different conclusion regarding this significant and widely debated [32] legal issue, I have no

choice but simply to record my respectful dissent.

---

**31.** It should go without saying that I refer to *any* judgment rendered at the conclusion of a class action in a foreign jurisdiction and not just to the judgment at issue in this case.

**32.** *See Wilkes v. Phoenix Home Life Mutual Insurance Co.,* 587 Pa. 590, 902 A.2d 366, 390 (2006) (Cappy, C.J., concurring) (citing to numerous cases which Chief Justice Cappy submits are reflective of the "spirited debate amongst courts and commentators regarding whether a foreign court's class action due process determination is subject to collateral review in another state court"); *see generally* 18A Charles Alan Wright, Arthur R. Miller, Edward Cooper, *Federal Practice and Procedure* § 4455 (2d ed.2002).