953 A.2d 478

DOLORES SIMMERMON, AS ADMINISTRATRIX AD PROSEQUEN-
    DUM FOR THE ESTATE OF JAMES SIMMERMON, PLAIN-
    TIFF–RESPONDENT, v. DRYVIT SYSTEMS, INC., DEFEN-
    DANT–APPELLANT, AND NEW WAVE PLASTERING, INC.,
    THE MANNING COMPANY AND JOHN DOES 1–10, DEFEN-
    DANTS.

Argued May 5, 2008—Decided August 11, 2008.

*Andrew P. Fishkin* argued the cause for appellant (*Edwards Angell Palmer & Dodge,* attorneys; *Mr. Fishkin, David N. Cohen* and *Danielle A. Brucchieri,* on the brief).

*Scott C. McKinley* argued the cause for respondent (*Hoffman Dimuzio,* attorneys; *Ronald P. Sierzega,* of counsel and on the brief).

Justice ALBIN delivered the opinion of the Court.

Nationwide class action suits, which seek redress for victims of defective products, consumer fraud, environmental torts, and other wrongs, are now part of the modern legal landscape. Such actions, however, pose particular challenges to our system of federalism. The central issue in this case is whether, pursuant to

the Full Faith and Credit Clause, a New Jersey court must give preclusive effect to a nationwide class action consumer fraud settlement in Tennessee and dismiss an ongoing individual action in this state that involves the same defendant and same subject matter covered in the Tennessee settlement.

Plaintiff claims that he did not receive timely notice of the Tennessee class action settlement or of his right to opt out of that settlement, and that, in any event, the prosecution of his New Jersey lawsuit constituted an unmistakable opt-out. Plaintiff also contends that in the New Jersey action defendant failed to make a timely disclosure of the parallel Tennessee class action as required by *Rule* 4:5–1(b)(2), thus fatally prejudicing his rights. For those reasons, he claims that our courts should not give full faith and credit to the Tennessee judgment.

On the other hand, defendant argues that the notice provided in the Tennessee class action met the due process requirements for invoking the Full Faith and Credit Clause. Defendant also maintains that plaintiff cannot collaterally attack the Tennessee judgment in a New Jersey court, regardless of whether defendant violated the disclosure mandated by our court rule.

The Law Division dismissed plaintiff's lawsuit on the ground that the final judgment of a sister state is entitled to full faith and credit. The Appellate Division reversed, holding that defendant's failure to timely disclose to plaintiff and the court its knowledge of the class action settlement, pursuant to *Rule* 4:5–1(b)(2), "prevents it from invoking the preclusive effect" of the Tennessee judgment. *Simmermon v. Dryvit Sys., Inc.*, 393 *N.J.Super.* 333, 335, 923 *A.*2d 311 (App.Div.2007).

We now reverse. Although defendant's violation of *Rule* 4:5–1(b)(2) made it more difficult for plaintiff to seek relief in the Tennessee court from the class action settlement, it did not necessarily fatally impair his ability to do so. The Full Faith and Credit Clause and principles of federalism command that a Tennessee court, not a New Jersey court, should determine whether plaintiff is bound by the class action settlement. Once a New

Jersey court determines that the class action notice procedures complied with due process, absent exceptional circumstances, a Tennessee court is the proper forum to address whether plaintiff received sufficient notice of the class action and whether prosecuting an individual suit in New Jersey constituted an effective opt-out of the class action.

Only if a Tennessee court decides that plaintiff is not bound by the class action settlement may plaintiff proceed with his New Jersey action. However, as a result of its violation of *Rule* 4:5–1(b)(2), defendant will be responsible for the litigation expenses, including attorneys' fees, incurred by plaintiff.

## I.

The tortuous parallel procedural history of plaintiff's individual lawsuit and the nationwide class action litigation is the backdrop to this case.

## A.

On September 17, 2001, plaintiff James Simmermon filed a complaint in the Superior Court, Law Division, seeking damages against defendant Dryvit Systems, Inc. (Dryvit), for violating the New Jersey Consumer Fraud Act, *N.J.S.A.* 56:8–1 to –184, and the Magnuson–Moss Warranty Act, *Pub.L. No.* 93–637, 88 *Stat.* 2183 (1975) (codified in scattered sections of 15 *U.S.C.A.*), and for committing several common law torts.[1] The gist of the complaint is that Dryvit, the manufacturer of a synthetic stucco (Exterior Installation and Finishing System), fraudulently misrepresented the quality of its product to plaintiff, who purchased it in 1995 for his custom-made home in Woolwich, New Jersey. In 1999, plain-

---

[1] During the pendency of the New Jersey litigation, Mr. Simmermon passed away. His mother, Dolores Simmermon, was appointed administratrix ad prosequendum of Mr. Simmermon's estate and now is plaintiff in this matter. To avoid confusion, however, we refer throughout this opinion to Mr. Simmermon as plaintiff.

tiff discovered that the stucco was bubbling and peeling off and therefore defective.[2]   Plaintiff also named as defendants the Manning Company, the distributor of Dryvit's synthetic stucco product, and New Wave Plaster, Inc., the installer of the stucco.   Both Manning and New Wave have been dismissed from the case, leaving Dryvit as the sole defendant.[3]

### Tennessee class action

A year before plaintiff brought his New Jersey action, Tennessee homeowners filed a class action against Dryvit in the Tennessee Circuit Court, asserting the same basic claims that appear in plaintiff's complaint.   On April 8, 2002—almost seven months after plaintiff filed his New Jersey complaint—the class action, which until then had been limited to Tennessee homeowners, was converted into a nationwide homeowners' class action.[4]   That same day, representatives of the now nationwide class action and Dryvit entered into a settlement agreement that was preliminarily approved by the Tennessee Circuit Court.   Under the settlement agreement, Dryvit would provide class members with property inspections, three-year limited warranties, and reimbursement of repair costs as determined by a formula.

In June 2002, the claims administrator of the settlement sent all identifiable class members a first-class mailing containing settlement information, a claim form, and an opt-out form.[5]   Home-

---

[2] Plaintiff estimated that the removal and the replacement of the stucco would cost $90,000.

[3] The claims against New Wave Plastering were dismissed for failure to prosecute.   The parties agreed to dismiss the action against the Manning Company.

[4] The nationwide class action extended to homeowners in every state except those in North Carolina.

[5] Additionally, information concerning the class action and settlement terms was published in advertisements in major national newspapers and magazines, local newspapers, trade publications, and on the official class action website, http://www.stuccosettlement.com.

owners who opted out of the class would not be bound by the settlement and would be free to pursue individual suits against Dryvit. On the other hand, those who did not timely complete and return the opt-out form would remain class members and have to abide by the terms of the settlement agreement.[6] In accordance with that agreement, completed opt-out forms had to be received by the claims administrator no later than September 3, 2002.

According to the claims administrator's records, on June 24, 2002, the notification letter was mailed to plaintiff's home in Woolwich. The letter forwarded to plaintiff was not among those returned by the postal service as undeliverable, and plaintiff was not among those who filed a request to opt out of the settlement.[7] Plaintiff was not one of the ten objectors to the class action challenging the fairness and adequacy of the notice procedures and the proposed settlement at the October 1, 2002 hearing before the Tennessee Circuit Court.

On January 14, 2003, the Circuit Court granted approval of the class settlement. The court found that the notification to class members "constituted the best practicable notice" and "was reasonably calculated, under the circumstances, to apprise class members of the pendency of [the] class action, [and of] their right to exclude themselves from the Class and the proposed settlement." The court also found that it had subject matter jurisdiction over the class action and personal jurisdiction over the class members, and ordered that class members who had not returned the opt-out form to the claims administrator were "permanently barred and enjoined" from obtaining "any benefits or other relief" in a lawsuit

---

[6] The settlement explicitly provided that "[m]embers of the Class (*including those who have initiated lawsuits against Settling Defendant*) who do not exclude themselves by the timely completion and mailing of the Request for Exclusion ... shall be Settlement Class Members, and shall be bound by the terms and conditions of this Agreement...." (Emphasis added).

[7] Of the 85,000 notice mailings, only 300 were returned as undeliverable.

filed in another jurisdiction related to claims asserted in the class action.

The Tennessee Court of Appeals stayed enforcement of the settlement through January 2005 to allow homebuilders to intervene for a determination of their rights under the settlement. In April 2005, the Tennessee Circuit Court dismissed the homebuilders' objections, confirmed the fairness of both the notification procedures and the settlement terms, and entered final judgment.

### New Jersey Simmermon case

Dryvit filed its answer in the *Simmermon* case on March 15, 2002, just three weeks before the Tennessee Circuit Court certified the nationwide class against Dryvit and gave its preliminary approval to the class action settlement. The record does not reveal when Dryvit first became aware that the Tennessee homeowners' class action would be converted into a nationwide class action. In any event, Dryvit's answer did not contain the certification mandated by *Rule* 4:5–1(b)(2). In accordance with that rule, Dryvit was required to aver "whether the matter in controversy [was] the subject of any other action pending in any court … or whether any other action … [was] *contemplated.*" *R.* 4:5–1(b)(2) (emphasis added). That rule, moreover, requires a defendant to file with the "[plaintiff] and with the court an amended certification if there is a change in the facts stated in the original certification." *Ibid.* Dryvit never filed any certification with plaintiff or the court that the "matter in controversy" in the *Simmermon* case was the subject of the Tennessee nationwide class action.

On March 25, 2003, Dryvit's counsel first sent a letter to plaintiff's counsel regarding the nationwide class action settlement—eleven months after preliminary approval of the settlement, six months after the opt-out deadline had expired, and two months after the Tennessee court entered its approval of the settlement. In the letter, plaintiff's counsel was advised that because his client had not opted out of the nationwide class action, he was " 'barred and enjoined' " from proceeding with the case

against Dryvit. Defense counsel asked that a stipulation dismissing the claims against Dryvit be forwarded to him. Dryvit's counsel later forwarded a copy of the class action settlement agreement to plaintiff's counsel and renewed his call for a stipulation dismissing the claims against Dryvit. Plaintiff's counsel did not oblige. By this point, the parties had exchanged written discovery.

On May 30, 2003, defense counsel, for the first time, informed the trial court about the class action settlement and submitted that plaintiff was barred from prosecuting the claim against Dryvit. In response, plaintiff's counsel complained that Dryvit, while exchanging discovery in the New Jersey case, withheld information about the class action, thus denying plaintiff the opportunity to opt out.

Discovery proceeded, and plaintiff was deposed on three different dates, the last time in July 2004. In the meantime, in March 2004, the trial court rejected Dryvit's argument that the parties lacked privity and therefore denied Dryvit's motion to dismiss the Consumer Fraud Act and common law tort claims. The court, however, granted summary judgment in favor of Dryvit on the Magnuson–Moss Warranty Act claim.

At a hearing in November 2004, Dryvit sought a stay of the *Simmermon* case pending final resolution of the nationwide class action in Tennessee. Dryvit's counsel explained that the order approving the class action settlement had been stayed pending an appeal by "intervenors challenging the order approving the class action settlement." Counsel further explained that because the settlement was not a final nonappealable order under Tennessee law, it was not yet entitled to the preclusive effect of res judicata. Despite that information, plaintiff did not seek relief in the Tennessee courts from the settlement order. Instead, he filed an affidavit with the Law Division, averring that he did not receive a mailed notice concerning the class action settlement and that had he received timely notice he would have opted out of the class.

Invoking the doctrines of laches and equitable estoppel, the trial court denied the motion to stay the New Jersey action. The trial court found that while litigating the *Simmermon* case, Dryvit's counsel had strategically waited until after the opt-out deadline to inform plaintiff of the nationwide class action. The court also determined that although plaintiff did not complete the opt-out form, his prosecution of claims in New Jersey—without notice of the settlement—"reasonably demonstrates a desire to be excluded from the [nationwide] class action litigation." [8]

After the appeals had run their course in the nationwide class action in 2005, and the Tennessee Circuit Court again approved the settlement, the Law Division in July 2005 granted Dryvit's motion to amend its answer to include the affirmative defense of res judicata based on the finality of the nationwide class action settlement.

In January 2006, the trial court granted Dryvit's motion to dismiss plaintiff's action on the ground that New Jersey was obliged to give full faith and credit to the Tennessee class action judgment, which precluded the prosecution of plaintiff's individual claims in New Jersey. The court determined that the Tennessee Circuit Court had jurisdiction over the class action and plaintiff as a class member, that the first-class mailing and other procedures for notifying class members of the settlement and opt-out satisfied federal due process requirements, and that plaintiff's failure to opt out rendered him bound by the class action settlement.

The court rejected plaintiff's arguments that, on the basis of equitable estoppel and laches, defendant should be barred from invoking the preclusive effect of the Tennessee judgment. The court reasoned that Dryvit's failure to disclose its knowledge of the Tennessee class action did not place plaintiff "in a position of extreme and unalterable prejudice." That was so because plaintiff was aware of the class action since 2003 and made no effort in the

---

[8] Following that ruling, the judge who had presided over the *Simmermon* case retired and the case was assigned to another judge.

succeeding two years, before the Tennessee judgment became truly final, to challenge the notification procedure or to request an extension of the opt-out period in the Tennessee courts. The court observed that plaintiff acted on the erroneous belief that the nationwide class settlement did not control the New Jersey litigation. The trial court also denied plaintiff's motion for reconsideration.

## B.

The Appellate Division reversed the grant of summary judgment and remanded to the trial court for further proceedings. *Simmermon, supra,* 393 *N.J.Super.* at 335, 340, 923 *A.*2d 311. The panel reasoned that under *Rule* 4:5–1(b)(2), Dryvit was required to disclose to plaintiff and the court the terms of the nationwide class action settlement because the "transactional facts" in that matter were the same as those in the *Simmermon* case. *Simmermon, supra,* 393 *N.J.Super.* at 339, 923 *A.*2d 311. The panel concluded that Dryvit's failure to comply with *Rule* 4:5–1(b)(2) barred "it from invoking the preclusive effect of the settlement agreement in the Tennessee matter." *Simmermon, supra,* 393 *N.J.Super.* at 335, 923 *A.*2d 311.

The panel also noted that Dryvit offered no explanation for its violation of the rule. *Id.* at 339, 923 *A.*2d 311. According to the panel, had Dryvit provided the certification mandated by *Rule* 4:5–1(b)(2), plaintiff could have taken the appropriate steps to opt out of the nationwide class action and the trial court would "have been in the position, as part of its case management responsibilities, to address the situation in a timely fashion." *Simmermon, supra,* 393 *N.J.Super.* at 339, 923 *A.*2d 311. By violating the rule, Dryvit was able "to wait until the Tennessee litigation [was] concluded ... and then, when it [was] too late for plaintiff to opt out of the Tennessee proceedings, use the Tennessee class action settlement as a bar to plaintiff obtaining any relief in New Jersey." *Ibid.* Because the panel believed that Dryvit should not be permitted to reap a benefit from its conduct, it concluded that

the violation "of the *Rule*'s clear injunction [was] an entirely independent legal basis" for not enforcing the Tennessee judgment. *Id.* at 339–40, 923 *A*.2d 311. As a result, the panel discerned no need to "address the Due Process analysis conducted by the trial court." *Id.* at 339, 923 *A*.2d 311.

We granted defendant's petition for certification. 192 *N.J.* 596, 934 *A*.2d 638 (2007).

## II.

Dryvit submits that the Tennessee Circuit Court had jurisdiction over plaintiff's claims and that the notice provided to members of the nationwide class action concerning the settlement and right to opt out satisfied federal due process requirements. Therefore, the Tennessee judgment was entitled to preclusive effect under the Full Faith and Credit Clause, regardless of Dryvit's failure to file the certification mandated by *Rule* 4:5–1(b)(2). Dryvit, moreover, insists that it was not required to submit a *Rule* 4:5–1(b)(2) certification alerting plaintiff to what plaintiff presumably already knew—that he was a member of a class action. For those reasons, Dryvit argues that the Appellate Division erred in sacrificing the commands of a constitutional imperative to a court rule.

On the other hand, plaintiff asserts that the Appellate Division properly invoked Dryvit's violation of *Rule* 4:5–1(b)(2) as a justification for allowing his New Jersey claims to proceed. Plaintiff notes that Dryvit's failure to file the mandatory certification informing him of the class action pursuant to *Rule* 4:5–1(b)(2) left him in the dark until after the deadline for opting out of the nationwide class action settlement. According to plaintiff, had Dryvit abided by the court rule, he would have exercised his right to withdraw from the settlement. He also claims that the means employed to notify him of the Tennessee class action settlement were not "reasonably calculated, under all the circumstances" to achieve that result. Even if notice of the class action complied with due process, plaintiff urges that his prosecution of his New

Jersey claims constituted an effective opt-out and that he should not be bound by the class action settlement under the Full Faith and Credit Clause.

## III.

The central issue before us is whether the trial court was correct in giving preclusive effect to the Tennessee class action settlement in accordance with the Full Faith and Credit Clause or whether the Appellate Division was correct in denying Dryvit the benefit of the Tennessee judgment because of Dryvit's violation of *Rule* 4:5–1(b)(2). In deciding that issue, we must address when a judgment is entitled to full faith and credit. We must also analyze corollary principles of comity and federalism, and whether a party is entitled to enforcement of an out-of-state judgment that the party may have obtained through the violation of a court rule intended to further the administration of justice.

We begin with a discussion of the full faith and credit doctrine.

## A.

Article IV, Section 1 of the United States Constitution provides that "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State." That constitutional principle is enforced by a similarly worded federal statute known as the Full Faith and Credit Act, 28 *U.S.C.A.* § 1738 ("Such Acts, records and judicial proceedings . . . shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or possession from which they are taken."). The full faith and credit doctrine is essential to our system of federalism, a system comprised of fifty different states, each equal to the other and each with its own distinctive judicial system. *Underwriters Nat'l Assurance Co. v. N.C. Life & Accident & Health Ins. Guar. Ass'n*, 455 *U.S.* 691, 703–04, 102 *S.Ct.* 1357, 1365, 71 *L.Ed.2d* 558, 570 (1982). Because the doctrine recognizes that we are one nation, not fifty principali-

ties, respect for the judgments entered by the court of a sister state is critical to avoid the type of divisive parochialism that breeds duplicative litigation and waste of judicial resources. *Ibid.*

■ Under the Full Faith and Credit Act, our courts must treat a Tennessee state court judgment with the same respect that judgment would receive in a Tennessee court. *See Matsushita Elec. Indus. Co. v. Epstein,* 516 *U.S.* 367, 373, 116 *S.Ct.* 873, 877, 134 *L.Ed.*2d 6, 16–17 (1996). A class action judgment in a sister state, "like any other judgment . . ., is presumptively entitled to full faith and credit" in a New Jersey court. *Id.* at 373–74, 116 *S.Ct.* at 878, 134 *L.Ed.*2d at 17.

■ However, before we will give full faith and credit to a class action judgment of a sister state, class members in that action must have been afforded "the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause." *Kremer v. Chem. Constr. Corp.,* 456 *U.S.* 461, 481, 102 *S.Ct.* 1883, 1897–98, 72 *L.Ed.*2d 262, 280 (1982). Those "minimum procedural requirements" are "notice plus an opportunity to be heard and participate in the litigation." *Phillips Petroleum Co. v. Shutts,* 472 *U.S.* 797, 811–12, 105 *S.Ct.* 2965, 2974, 86 *L.Ed.*2d 628, 641–42 (1985). The notice "must be the best practicable, 'reasonably calculated, under all the circumstances, to apprise [class members] of the pendency of the action and afford them an opportunity to present their objections.'" *Id.* at 812, 105 *S.Ct.* at 2974, 86 *L.Ed.*2d at 642 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 *U.S.* 306, 314, 70 *S.Ct.* 652, 657, 94 *L.Ed.* 865, 873 (1950)). The notice should also describe the class members' rights in the action and provide them "an opportunity to remove [themselves] from the class by executing and returning an 'opt out' or 'request for exclusion' form to the court." *Ibid.*

In *Phillips Petroleum Co. v. Shutts,* a case involving a Kansas class action, the notification procedures demanded by due process were met because each class member was sent via first-class mail a "fully descriptive notice . . . with an explanation of the right to 'opt-out.'" *Id.* at 812, 105 *S.Ct.* at 2975, 86 *L.Ed.*2d at 642; *see*

*also id.* at 814, 105 *S.Ct.* at 2976, 86 *L.Ed.*2d at 643 ("The interests of the absent [class members] are sufficiently protected by the forum State when those [class members] are provided with a request for exclusion that can be returned within a reasonable time to the court.").

Nonetheless, even when a sister state court provides the necessary notification to class members required by due process, we still will not accord full faith and credit to a judgment that is infirm for other reasons. For example, we are not compelled to give preclusive effect to a sister state's judgment procured by fraud or misrepresentation—a judgment that would not hold up in that sister state's courts. *See Matsushita, supra,* 516 *U.S.* at 373, 116 *S.Ct.* at 877, 134 *L.Ed.*2d at 16–17; *Morris v. Jones,* 329 *U.S.* 545, 550–51, 67 *S.Ct.* 451, 455–56, 91 *L.Ed.* 488, 495–96 (1947); *Wilkes v. Phoenix Home Life Mut. Ins. Co.,* 587 *Pa.* 590, 902 *A.*2d 366, 387 (2006).

B.

Principles of comity and federalism, which undergird the full faith and credit doctrine, counsel that ordinarily a sister state court—not a New Jersey court—should entertain challenges to the fairness or adequacy of one of its judgments. *See Hospitality Mgmt. Assocs., Inc., v. Shell Oil Co.,* 356 *S.C.* 644, 591 *S.E.*2d 611, 613, 619 (holding that challenges to class action judgments rendered by Alabama and Tennessee state courts should be addressed in those courts, not by collateral review in South Carolina state court), *cert. denied,* 543 *U.S.* 916, 125 *S.Ct.* 34, 160 *L.Ed.*2d 200 (2004). Those principles have led courts to decline to engage in "collateral second-guessing" of the judgment of a sister state court already responsible for protecting the interests of absent class members in a class action case. *Epstein v. MCA, Inc.,* 179 *F.*3d 641, 648 (9th Cir.), *cert. denied,* 528 *U.S.* 1004, 120 *S.Ct.* 497, 145 *L.Ed.*2d 384 (1999); *see also Hospitality Mgmt., supra,* 591 *S.E.*2d at 619. That view is driven by the very real concern that permitting broad collateral review of nationwide class actions in

forty-nine states will completely undermine the efficacy of class actions and result in the waste of judicial resources. *See, e.g., Epstein, supra,* 179 *F.*3d at 648; *Hospitality Mgmt., supra,* 591 *S.E.*2d at 619.[9]

■ At this stage comity commands that we limit our role to a review of whether the Tennessee Circuit Court implemented adequate safeguards to ensure that the notice to class members satisfied the requisites of due process. *See Lamarque v. Fairbanks Capital Corp.,* 927 A.2d 753, 765 (R.I.2007); *see also Sensient Colors Inc. v. Allstate Ins. Co.,* 193 *N.J.* 373, 378, 939 A.2d 767 (2008) ("The proper functioning of our federal system requires that courts of sister states, when appropriate, extend comity to one another."); *Thompson v. City of Atlantic City,* 190 *N.J.* 359, 382, 921 A.2d 427 (2007) ("Comity is grounded in notions of accommodation and good-neighborliness, and is a necessary expedient to preserve the delicate balance of power and harmonious relations among the various sovereigns of our federalist system.").

From our review, we are satisfied that the Tennessee Circuit Court possessed subject matter jurisdiction over the nationwide class action and personal jurisdiction over plaintiff's claims. We

---

[9] Some courts have engaged in a "broad collateral review" of the class action judgment—one that considers the merits of a plaintiff's individualized challenge to a sister state's class action judgment. *See, e.g., Wilkes v. Phoenix Home Life Mut. Ins. Co.,* 587 *Pa.* 590, 902 A.2d 366, 382–85 (2006); *Vermont v. Homeside Lending, Inc.,* 175 *Vt.* 239, 826 A.2d 997, 1016–20 (2003). Those courts posit that a limited review may be too deferential to the determinations of the state court rendering the class action judgment, fearing that the sister state court may fail to adequately protect the rights of a class member. *Wilkes, supra,* 902 A.2d at 382–85; *Homeside Lending, supra,* 826 A.2d at 1016–20; *see also Lamarque v. Fairbanks Capital Corp.,* 927 A.2d 753, 767–68 (R.I.2007) (Robinson, J., dissenting) (criticizing limited review as "insufficiently respectful of the right of the individual litigant to question *in the court of his or her initial choosing* ... the adequacy of the notice, if any, that was given to that litigant in the context of a class action proceeding in a foreign jurisdiction"). We are not certain whether the "broad collateral review" approach is truly faithful to the full faith and credit doctrine.

agree with the trial court that the multi-faceted methods used for notifying class members met requisite standards of due process. *See Shutts, supra,* 472 *U.S.* at 811–14, 105 *S.Ct.* at 2974–76, 86 *L.Ed.*2d at 641–43. The first-class mailing to the approximately 85,000 class members in the nationwide class action contained pertinent information about the settlement and how awards would be structured, and included a separate one-page form to be returned to the claims administrator allowing for a class member to opt out of the settlement. Two representatives of the claims administrator filed affidavits with our Law Division attesting that a "review of [their] records indicates that on June 24, 2002, the Notice of Class Settlement was sent by first class mail to [plaintiff's home address]." The letter forwarded to plaintiff was not returned as undeliverable by the postal service. Additionally, notice of the settlement was published multiple times in major national periodicals such as the *New York Times, USA Today, People,* and *Newsweek,* as well as in local newspapers throughout the country and in relevant trade publications.

It also bears mentioning that the Tennessee Circuit Court entertained challenges to the settlement at three separate fairness hearings and reviewed a comprehensive report detailing the means for notifying class members of the settlement. The Circuit Court concluded that the notification procedures were the "best practicable ... under the circumstances." We are persuaded that the procedures that led to the nationwide settlement approved by the Tennessee court met due process standards. That does not mean, however, that plaintiff lacks other grounds for attacking the Tennessee judgment.

## C.

Plaintiff argues that he should not be bound by the Tennessee class action judgment for several reasons: (1) he did not receive *actual* notice of the class action settlement or of his right to opt out, (2) he effectively opted out of the nationwide class by prosecuting his individual claims in New Jersey, and (3) he was

denied timely information concerning his right to opt out because of Dryvit's violation of *Rule* 4:5–1(b)(2). Plaintiff has a right to make those challenges, but the appropriate forum to address them is a Tennessee court. After a New Jersey court has determined that a sister state court has entered a class action judgment following due process standards, a broader collateral attack of that judgment—absent exceptional circumstances, such as fraud—is best made in the sister state court. Those exceptional circumstances are not present here.

We condemn Dryvit's violation of *Rule* 4:5–1(b)(2), which appears to have been a tactical decision to gain an unfair advantage. Nonetheless, we cannot conclude that plaintiff suffered irreparable prejudice, and therefore we reject plaintiff's argument that the rule violation provides a sufficient basis for this Court to ignore the dictates of the Full Faith and Credit Clause.

First, we address Dryvit's conduct. *Rule* 4:5–1(b)(2) provides in pertinent part:

> Each party shall include within the first pleading a certification as to whether the matter in controversy is the subject of any other action pending in any court ... or whether any other action ... is contemplated; and if so, the certification shall identify such actions and all parties thereto.... Each party shall have a continuing obligation during the course of the litigation to file and serve on all other parties and with the court an amended certification if there is a change in the facts stated in the original certification.

The rule sets forth in clear and unambiguous language what is expected of attorneys, leaving no room for evasion. For that reason, Dryvit's conduct is inexcusable. Parties have the mandatory duty to disclose in their pleadings whether or not the matter in which they are involved is the subject of another pending or contemplated action.[10] It bears mentioning that coun-

---

[10] Notably, the appendix to our court rules has form answers with the appropriate certification language, *see* Pressler, *Current N.J. Court Rules*, Appendix XI–E and –F at 2396–97 (2008), and form answers including the certification appear in the New Jersey Institute for Continuing Legal Education's basic civil trial preparation book.

sel for Dryvit used the appropriate certification while representing Dryvit in a separate matter preceding this case.

In its answer filed on March 15, 2002, just three weeks before Dryvit entered into a nationwide class action settlement in Tennessee, Dryvit failed to certify, as required, whether the "matter in controversy" in the *Simmermon* case was the subject of a "contemplated" action. Although Dryvit had a continuing obligation to make a timely disclosure to plaintiff and the court of the existence of the class action settlement, Dryvit's counsel waited eleven months to spring that information on his adversary—after the opt-out deadline had expired and the Tennessee Circuit Court had approved the settlement. By then Dryvit's counsel considered plaintiff bound by the settlement and requested from plaintiff a stipulation of dismissal for all of his claims.

Counsel's explanation that he did not believe that he had an obligation to file a certification because plaintiff must have known he was a party to the class action hardly seems credible. Had Dryvit provided the mandated certification, plaintiff assuredly could have taken steps to opt out of the class action within the prescribed period. Had the certification been filed, the trial court could have exercised its case management responsibilities and inquired of plaintiff whether he intended to proceed as a member of the class action or with his case in New Jersey. The rule benefits the court, allowing it to avoid duplicative litigation and waste of judicial resources.

*Rule* 4:5–1(b)(2) provides for the imposition of sanctions on a party that does not file the required certification: "If a party fails to comply with its obligations under this rule, the court may impose an appropriate sanction including . . . the imposition on the noncomplying party of litigation expenses that could have been avoided by compliance with this rule." It is only fair that Dryvit be held responsible for those litigation expenses, including attorneys' fees, that would not have been incurred by plaintiff had Dryvit filed a timely certification.

We cannot find, however, in the circumstances of this case, that the violation of *Rule* 4:5–1(b)(2) should stand as a bar to giving full faith and credit to the Tennessee judgment. We come to that conclusion because plaintiff's counsel learned of the class action settlement from Dryvit's counsel in March 2003 and yet took no steps to intervene and seek relief. Enforcement of the settlement was stayed in Tennessee for two years pending appeals, and the Tennessee Circuit Court conducted a final fairness hearing in April 2005. During that time, plaintiff did not pursue available avenues to preserve his rights in Tennessee.[11] Although Dryvit's violation of the certification rule made it more difficult for plaintiff to opt out—within the prescribed period, plaintiff only had to complete a form—plaintiff was not irreparably prejudiced and had, and still may have, resort to the Tennessee courts to seek relief.[12]

The facts before us are strikingly similar to those that confronted the Rhode Island Supreme Court in *Lamarque v. Fairbanks Capital Corp.* In that case, apparently unknown to the plaintiff, she was included as a class member in a class action settlement involving Fairbanks Capital in Massachusetts federal court at the same time she filed suit against Fairbanks in Rhode Island state court on a subject covered by the settlement. *Lamarque, supra,* 927 *A.*2d at 754–56, 767 n. 26. Fairbanks knew that the federal court had enjoined class members from prosecuting individual

---

[11] It is somewhat understandable that plaintiff did not seek relief in the Tennessee courts after November 2004, when the Law Division, on the basis of equitable estoppel and laches, denied Dryvit's motion for a stay of the New Jersey action pending the outcome of the appeals in Tennessee challenging the class action settlement. It is less understandable that plaintiff did not seek relief in the Tennessee courts during the twenty months between March 2003, when plaintiff's counsel first learned of the class action settlement, and November 2004.

[12] Had Dryvit's failure to make a timely disclosure pursuant to *Rule* 4:5–1(b)(2) so completely deprived plaintiff of the opportunity to seek relief in Tennessee, we might have equitably foreclosed Dryvit from pressing its argument that the Tennessee judgment should be given preclusive effect. *See Knorr v. Smeal,* 178 *N.J.* 169, 177–81, 836 *A.*2d 794 (2003) (describing the equitable doctrines of equitable estoppel, laches, and waiver).

claims, but nevertheless waited until after the opt-out deadline had run in the class action settlement before moving in Rhode Island state court to interpose the defense of res judicata. *Id.* at 767 n. 27. Although the Rhode Island Supreme Court found Fairbanks' conduct as "questionable" and perhaps "indicative of sharp and unseemly practice," the court concluded that the plaintiff's challenge to the class action settlement had to be brought in the Massachusetts federal court. *Ibid.*

Likewise, plaintiff here must seek relief in the court that entered the judgment approving the class action settlement. Tennessee has a court rule almost identical to New Jersey's *Rule* 4:50, which permits a party to seek relief from a judgment on certain specified grounds. *Tenn. R. Civ. P.* 60.02 provides that a court "may relieve a party . . . from a final judgment, order, or proceeding" based on "(1) mistake, inadvertence, surprise or excusable neglect; (2) fraud . . ., misrepresentation, or other misconduct of an adverse party . . . or (5) *any other reason justifying relief from the operation of the judgment.*" (Emphasis added). Although the rule specifies that a challenge based on grounds (1) and (2) must be made within a year after entry of judgment, that time bar does not apply to (5). Moreover, the rule's time bar "does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order or proceeding, or to set aside a judgment for fraud upon the court." *Ibid.*

Additionally, even when class action notice procedures satisfy the requisites of due process, some jurisdictions have found that a court exercising its discretion may extend the opt-out period when a class member demonstrates "excusable neglect" for its failure to opt out within the deadline. *See, e.g., In re Four Seasons Sec. Laws Litig.,* 493 *F.*2d 1288, 1290 (10th Cir.1974); *Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chicago,* 120 *F.R.D.* 51, 52–53 (N.D.Ill.1988); *In re Prudential Ins. Co.,* 177 *F.R.D.* 216, 236–37 (D.N.J.1997); *In re Del–Val Fin. Corp. Sec. Litig.,* 154 *F.R.D.* 95, 96 (S.D.N.Y.1994). Courts have relied on either *Fed. R.Civ.P.* 6(b)(2) (extension of time), 23(d) (managing class actions),

or 60(b)(1) (relief from judgment).[13]   *See Prudential, supra,* 177 *F.R.D.* at 236–37 (citing cases using those rules to grant extension of time to opt out).   Accordingly, plaintiff must seek relief from the Tennessee judgment in a Tennessee court.

## V.

We conclude that the Tennessee Circuit Court had jurisdiction over plaintiff and the nationwide class action settlement, and that the notification procedures for apprising class members about the settlement and the opt-out met the requisite standards of due process.   The Tennessee judgment, therefore, must be given full faith and credit in this state unless plaintiff obtains relief from that judgment in a Tennessee court.

Dryvit will be responsible for all litigation expenses, including attorneys' fees, incurred by plaintiff in seeking relief from the Tennessee judgment.   If plaintiff applies for relief in Tennessee and is not excluded as a class member from the settlement and the Tennessee judgment remains in effect, then the Law Division in this state must give preclusive effect to that judgment.   In such case, Dryvit will also be responsible for *all* litigation expenses, including attorneys' fees, incurred by plaintiff from the time it breached *Rule* 4:5–1(b)(2)—March 15, 2002, the date that Dryvit filed an answer without the required certification.[14]

If Tennessee excludes plaintiff from the class action settlement, he then may proceed with his remaining New Jersey claims.   In such case, because the appeals to the Appellate Division and this Court clearly could have been avoided had Dryvit filed the re-

---

[13] We note that the *Tennessee Rules of Civil Procedure* mirror those federal rules.   *See Tenn. R. Civ. P.* 6.02 (extension of time); *Tenn. R. Civ. P.* 23.04 (managing class actions); *Tenn. R. Civ. P.* 60.02 (relief from judgment).

[14] Dryvit would be responsible for *all* litigation expenses because its violation of the rule would have deprived plaintiff of the opportunity not only to proceed with and potentially prevail on his Consumer Fraud Act claims, but also to recoup his attorneys' fees pursuant to the Act. *See N.J.S.A.* 56:8–19.

quired *Rule* 4:5–1(b)(2) certification, the trial court is directed to impose the litigation expenses, including attorneys' fees, incurred by plaintiff in those appeals. The trial court will also determine all other such litigation expenses incurred by plaintiff at the pretrial stage that are attributable to the violation of the rule. Under that scenario, Dryvit would not be liable for litigation expenses for pretrial work, such as depositions and motions, related to the substantive claims advanced by plaintiff.

Accordingly, we reverse the judgment of the Appellate Division, and remand to the trial court for proceedings consistent with the opinion.

*For reversal and remandment*—Chief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN, WALLACE, RIVERA–SOTO and HOENS—7.

*Opposed*—None.