**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3177-23

613 HOCKEY, LLC,

      Plaintiff-Respondent,

v.

184 MATTHEW HOLDING
LIMITED LIABILITY
COMPANY,

      Defendant-Appellant,

and

THE CITY OF ORANGE
TOWNSHIP,

      Defendant.

_____

184 MATTHEW BSD, LLC,

      Intervenor-Respondent.

_____

Submitted May 6, 2025 – Decided June 24, 2025

Before Judges Gilson and Augostini.

On appeal from the Superior Court of New Jersey, Chancery Division, Essex County, Docket No. F-003392-22.

Levitt & Slafkes, PC, attorneys for appellant (Bruce H. Levitt, on the briefs).

Patrick O. Lacsina Law Offices, LLC, attorney for intervenor 184 Matthew BSD, LLC (Patrick O. Lacsina, Sr., on the brief).

Boudwin Ross Roy Leodori PC, attorneys for respondent 613 Hockey, LLC, join in the brief of intervenor 184 Matthew BSD, LLC.

PER CURIAM

Following the entry of a final judgment by default in a tax-certificate foreclosure action, property located at 184 Matthew Street in Orange, New Jersey (the property) was sold to a third party, 184 Matthew BSD, LLC (BSD, LLC). The former property owner, defendant 184 Matthew Holding Limited Liability Company (the Holding Company), then sought to vacate the final judgment, representing that it would make "whole" both the purchaser of the tax certificate, plaintiff 613 Hockey, LLC (Hockey), and BSD, LLC. Based on those representations, the Chancery court granted the motion to vacate the final judgment. When, however, the Holding Company failed to make Hockey and BSD, LLC whole, the court vacated its prior order and reinstated the final judgment by default.

The Holding Company now appeals from the May 2, 2024 order reinstating the final judgment. Because the current record does not establish if the Holding Company was properly served, we remand for further proceedings on that issue, including an evidentiary hearing if necessary. On remand, the Chancery court will also need to conduct a hearing to determine whether the Holding Company had any equity in the property at the time the final judgment was entered and, if so, whether the Holding Company has a right to be compensated for that equity.

I.

Before 2020, the Holding Company owned the property. In 2018 and 2019, the Holding Company did not pay taxes or sewer charges on the property in the aggregate amount of $41,547.30. Accordingly, on December 27, 2019, the City of Orange sold a tax-lien certificate on the property, which was initially purchased by "FIG Cust FIGNJ19LLC & Sec. Pty" and subsequently assigned to TL Six, LLC (TL Six).

On April 11, 2022, TL Six filed a tax-lien foreclosure action against the Holding Company. In attempting to effectuate service on the Holding Company, TL Six relied on a recent "Status Report" from the "New Jersey Business Gateway" (the Entity Report) and municipality tax records for the property.

The Entity Report listed Jonathan Friedman as the Holding Company's agent for service of process and identified his address as 384 Main Street in Orange, New Jersey (the Main Street address). The Entity Report also listed 1245 Hewlet Plaza, Unit 496, in Hewlet, New York (the Hewlet Plaza address) as the Holding Company's main business address. Municipality tax records identified the Holding Company's mailing address as P.O. Box 1687/Crowne Management in Union, New Jersey (the P.O. Box).

TL Six made multiple attempts to effectuate personal service on the Holding Company. First, on May 26, 2022, a process server attempted personal service on the Holding Company at the property, but service failed as "the given . . . address [was] a rental property [and the] entity [was] not located [t]here." Second, on May 31, 2022, a process server attempted personal service on Jonathan Friedman at the Main Street address, but service failed as the Holding Company was unknown at that address. Third, on June 9, 2022, a process server attempted personal service on the Holding Company at the Hewlet Plaza address, but no one was located at that address because it was a post office.

In addition, TL Six made multiple efforts to effectuate service via regular and certified mail. On June 10, 2022, TL Six sent the summons and complaint to the property, and TL Six contends that the certified mail was accepted. The

certified mail was marked as being delivered to "the front desk, reception area." The Holding Company, however, contends that "[t]his [was] an obvious error as the subject property . . . [was] a residential rental property . . . [with] no front desk/reception/mail room."

That same day, TL Six sent the summons and complaint by regular and certified mail to the Main Street address and the Hewlet Plaza address. Regarding the Main Street address, the certified mail was returned as listing an insufficient address. Concerning the Hewlett Plaza address, the regular and certified mail were returned as that address was marked "vacant."

Finally, on August 9, 2022, TL Six sent the summons and complaint to the P.O. Box. The certified mail was returned as listing an insufficient address.

Additionally, on July 6, 2022, TL Six published a "Notice To Absent Defendant" in the Star Ledger, a newspaper which services the Essex County area where the property is located.

Thereafter, on September 14, 2022, TL Six requested entry of default against the Holding Company for its failure to answer or appear. In the certification filed in support of the entry of default, TL Six relied on the publication as the proof of service on the Holding Company. That same day,

however, TL Six also submitted a certification of diligent inquiry describing its various attempts to effectuate personal service and substituted service by mail.

On October 7, 2022, the Chancery court entered an order fixing the amount required to redeem the property at $135,124.93, plus interest and costs of $1,547.23. Thereafter, TL Six assigned its interest in the property to Hockey, and an order substituting Hockey as plaintiff was entered on December 20, 2022. The Holding Company failed to redeem the property, and on January 10, 2023, the Chancery court entered a final judgment by default.

On March 6, 2023, Hockey sold the property to BSD, LLC for $340,000. BSD, LLC is the current owner of the property.

On May 24, 2023, the Holding Company moved to vacate the final judgment, alleging that it had not been properly served with the foreclosure complaint. In a supporting certification, the Holding Company asserted that during the relevant time, the property had been leased to two tenants who paid rent through its rental agent, North Jersey Acquisitions. Thus, the Holding Company contended that had TL Six "merely knocked on the door of the subject property and inquired of any one of the tenants[,] [TL Six] would have been advised of the rental agent's name and address where proper service of the summons and complaint could have been accomplished." Further, the Holding

A-3177-23

Company represented that it was "ready, willing and able to pay the full amount of taxes, penalties and interest due on the [tax] certificate."

On August 16, 2023, BSD, LLC cross-moved to intervene and opposed the Holding Company's motion to vacate the final judgment. BSD, LLC certified that it had (1) paid significant consideration for the property; (2) paid the taxes and insurance on the property since 2023; (3) developed portions of the property; and (4) leased the property to a commercial tenant.

Oral argument was heard on September 28, 2023, and later that day, the Chancery court entered an order granting the Holding Company's motion to vacate the final judgment. The court also entered an order allowing BSD, LLC to intervene. The trial court placed its reasons on the record.

Initially, the court noted that the Holding Company appeared to have had significant equity in the property at the time the final judgment of foreclosure was entered. The court explained that the uncompensated equity was an important consideration in its decision to vacate the final judgment.

The Chancery court then found that the Holding Company was entitled to relief under Rule 4:50-1(d), reasoning that the Holding Company had not been properly served with the complaint. In making that ruling, the trial court briefly reviewed some of TL Six's efforts to serve the Holding Company and questioned

whether it had made sufficient diligent inquiries. Nevertheless, the court explained that it was primarily relying on the Holding Company's representations that it would pay the full amount required to redeem the tax certificate and compensate both Hockey and BSD, LLC.

Thereafter, the Holding Company filed its answer in the foreclosure matter. The Chancery court then conducted several case management conferences with the parties and directed the parties to file written statements of their respective positions.

In its statement of position, the Holding Company represented that it would pay off the tax certificate amount and that this payment would then render the foreclosure action "moot." In contrast, Hockey reminded the Chancery court that the Holding Company had committed to making both it and BSD, LLC whole, but that the Holding Company had made no effort to do so.

In February 2024, BSD, LLC moved to enforce the court's September 28, 2023 order, contending that the Chancery court had vacated the final judgment on the condition that the Holding Company would make BSD, LLC whole. BSD, LLC certified that, as of February 2024, its costs to purchase, maintain, and improve the property were $405,967.52. Accordingly, BSD, LLC demanded

8

that the Holding Company pay it that amount of money or that the final judgment by default be reinstated.

The Holding Company opposed BSD, LLC's motion and took the position that BSD, LLC was seeking to enforce a provision that was not expressly set forth in the September 28, 2023 order; instead, it was relying on "dictum" from the hearing on the motion to vacate the final judgment.

On April 1, 2024, at a status conference, the Chancery court advised the parties that it was going to reconsider its September 28, 2023 order and invited the parties to submit further briefing. The Holding Company declined to submit any additional briefing on the reconsideration issue.

On May 2, 2024, the Chancery court entered an order that (1) reconsidered and vacated the September 28, 2023 order; (2) reinstated the January 10, 2023 final judgment; and (3) denied BSD, LLC's motion to enforce as moot. The court supported its May 2, 2024 order with a written statement of reasons.

In its statement of reasons, the Chancery court explained that its decision to vacate the final judgment by default had been based on the Holding Company's representations that it would make BSD, LLC whole. The court then reconsidered whether the original service on the Holding Company was proper. The court concluded that the only reason the Holding Company had not been

personally served was because it had failed to provide a proper address for its business office and registered agent. Consequently, the Chancery court concluded that the Holding Company had no equitable grounds to contest service.

In addition, the Chancery court considered and rejected the Holding Company's argument that the default judgment should be vacated under Rule 4:50-1(f). The court found that the Holding Company had refused to comply with the representations it had made to the court when the court vacated the final judgment. Accordingly, the court reasoned that the equities did not support the Holding Company's position and, therefore, the Holding Company was not entitled to relief under Rule 4:50-1(f).

## II.

The Holding Company now appeals from the May 2, 2024 order and makes three arguments. It contends that the Chancery court abused its discretion in (1) vacating the September 28, 2023 order; (2) denying its motion to vacate the default judgment under Rule 4:50-1(d); and (3) denying its motion to vacate the default judgment under Rule 4:50-1(f).

10

A.    The Default Judgment.

The Holding Company's arguments all depend on whether the Chancery court abused its discretion in reinstating the January 10, 2023 default judgment. The Chancery court initially vacated the default judgment in its September 28, 2023 order, primarily, because it determined that the Holding Company had not been properly served. Then, in reconsidering and vacating the September 28, 2023 order, the Chancery court reasoned that the Holding Company had been properly served. Consequently, a central issue on this appeal is whether the Holding Company had been properly served with the complaint.

It is well-settled that if service of process is not properly made, then any ensuing judgment is "void." M & D Assocs. v. Mandara, 366 N.J. Super. 341, 352-53 (App. Div. 2004) (first citing Jameson v. Great Atl. & Pac. Tea Co., 363 N.J. Super. 419, 425 (App. Div. 2003); and then citing Sobel v. Long Island Ent. Prods., Inc., 329 N.J. Super. 285, 293 (App. Div. 2000)). In other words, proper service is an essential element to achieving a just outcome. Romero v. Gold Star Distrib., LLC, 468 N.J. Super. 274, 300 (App. Div. 2021).

In that regard, the United States Supreme Court has held that due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity

to present their objections." Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 314 (1950). See Simmermon v. Dryvit Sys., Inc., 196 N.J. 316, 330 (2008). Consequently, when service of a summons and complaint has not been made on a defendant, any subsequent judgment "is absolutely void and of no legal effect for any purpose." Romero, 468 N.J. at 300 (quoting Garza v. Paone, 44 N.J. Super. 553, 557 (App. Div. 1957)) (internal quotation marks omitted).

The Holding Company is a limited liability company. "The general rule for personal service upon an unincorporated association or entity, such as an LLC . . . , is found in Rule 4:4-4(a)(5) . . . ." MTAG v. Tao Invs., LLC, 476 N.J. Super. 324, 334 (App. Div. 2023).[1] That rule provides that personal service may be made on "unincorporated associations . . . by serving a copy of the summons and complaint in the manner prescribed by [Rule 4:4-4(a)(1)] on an officer or managing agent." R. 4:4-4(a)(5).

---

[1] The Chancery court and BSD, LLC cite to Rule 4:4-4(a)(6). That rule, however, addresses service "[u]pon a corporation." R. 4:4-4(a)(6). We note that the rules for serving a corporation are different than the rules for serving an unincorporated association or LLC. See MTAG, 476 N.J. Super. at 328 ("Service upon a corporation in New Jersey is governed by Rule 4:4-4(a)(6) and N.J.S.A. 14A:4-2, whereas service upon an LLC is governed by Rule 4:4-4(a)(5) and . . . N.J.S.A. 42:2C-17.").

If an unincorporated association cannot be personally served within New Jersey, Rule 4:4-4(b)(1)(C) allows service to be effectuated by:

> [M]ailing a copy of the summons and complaint by registered or certified mail, return receipt requested, and, simultaneously, by ordinary mail to: . . . (3) . . . [an] unincorporated association that is subject to suit under a recognized name, addressed to a registered agent for service, or to its principal place of business, or to its registered office.

Rule 4:4-5(a) also permits service by publication in actions, like this one, "affecting specific property, or any interest therein." That rule provides:

> [Where] a defendant cannot, after diligent inquiry as required by this rule, be served within the State, service may, consistent with due process of law, be made[:]
>
> . . . .
>
> (3) by publication of a notice to absent defendants once in a newspaper published or of general circulation in the county in which the venue is laid; and also by mailing, within [seven] days after publication, a copy of the notice as herein provided and the complaint to the defendant, prepaid, to the defendant's residence or the place where the defendant usually receives mail, unless it shall appear by affidavit that such residence or place is unknown . . . .
>
> [R. 4:4-5(a).]

In addition to these rules, N.J.S.A. 42:2C-14 requires that a limited liability company have an in-state office and registered agent. In that regard,

13

the statute provides that a "[a] limited liability company shall designate and continuously maintain in this State: (1) an office, which need not be a place of its activity in this State; and (2) an agent for service of process." N.J.S.A. 42:2C-14(a).

The current record does not allow us to determine whether the Holding Company was effectively served. TL Six made three attempts to personally serve the Holding Company. TL Six, and Hockey as its successor, acknowledged that those attempts failed. TL Six then made efforts to effectuate service via regular and certified mail. Mailings were sent to (1) the property; (2) the Main Street address; (3) the Hewlet Plaza address; and (4) the P.O. Box.

In attempting to serve the Holding Company, TL Six relied on the Entity Report and municipal tax records. The Entity Report listed Jonathan Friedman as the Holding Company's agent for service of process and identified his address as the Main Street address. The Entity Report also listed the Hewlet Plaza address as the Holding Company's main business address. In addition, the municipal tax records identified the P.O. Box as the Holding Company's mailing address.

If those were correct addresses, then the Holding Company was effectively served with the summons and complaint. The Holding Company had

an obligation to designate a business address and agent for service of process. See N.J.S.A. 42:2C-14. The current record does not establish that the Entity Report and municipal tax records listed addresses that were provided by the Holding Company. If, however, at a hearing or upon further proofs, the Chancery court finds that those addresses were provided by the Holding Company, or the Holding Company failed to provide correct addresses as required by statute, then the Holding Company will not have grounds to dispute that it was served with the summons and complaint.

Moreover, the current record does not establish that TL Six provided sufficient explanations of its efforts to effectuate service before attempting notice by publication. In that regard, it remains unclear whether certain regular and certified mailings were returned. If, however, at a hearing or on further proofs, the Chancery court finds that those efforts were sufficient, then the publication will serve as an alternative effective means of providing the Holding Company with notice of the foreclosure action.

We also note that the Holding Company contends that it first learned of the default judgment sometime after January 2023, when Hockey's agent contacted the tenants at the property to collect rent. The managing member of the Holding Company contends that "[t]he tenants in turn informed [his]

15

managing agent, Sandy Bratcher[] [of] North Jersey Acquisitions[,] who advised [him] of the [f]inal [j]udgment." That representation warrants further factual evaluation.

Moreover, in determining whether the Holding Company had knowledge of the foreclosure action, it may be relevant to determine why it was not paying taxes and sewer charges on the property since 2018. If on remand the Chancery court determines that the Holding Company knew or should have known that it was not paying property taxes and sewer charges on the property, that could be an important factor in determining whether the Holding Company had notice or should have made reasonable inquiries as to whether a tax foreclosure action was pending. See Twp. of Jefferson v. Block 447A, Lot 10, 228 N.J. Super. 1, 7 (App. Div. 1988) ("The owner knows whether he has paid taxes. The owner is also charged with knowledge that his land may be sold by the municipality.").

We reject the Holding Company's argument that TL Six should have, or was required to, make inquiries with the tenants at the property. The rules and the law governing service of process do not require that type of effort. Simmermon, 196 N.J. at 330 (explaining that notice must be "reasonably calculated, under all the circumstances, to apprise [defendants] of the pendency of the action" (quoting Phillips Petrol. Co. v. Shutts, 472 U.S. 797, 812 (1985))

16

(internal quotation marks omitted)). Accordingly, on remand the Chancery court need not consider that argument when determining whether the Holding Company was properly or effectively served.

Finally, we clarify that in remanding this matter, we have not vacated the May 2, 2024 order. Instead, we leave that order in place and require the Chancery court to conduct further proceedings and enter a new order that is supported by additional findings of fact and conclusions of law. If the Chancery court finds that the Holding Company was not effectively served and should not be estopped from contesting service, then it can vacate the May 2, 2024 order and proceed accordingly.

B. Whether the Holding Company Had Equity in the Property and is Entitled to Compensation.

On remand, the Chancery court will also need to determine whether the Holding Company is entitled to compensation for any equity it had in the property at the time that the foreclosure judgment was entered. While this matter was pending, the United States Supreme Court held that a homeowner had a constitutional right to recover surplus equity when her home was taken under Minnesota's tax foreclosure laws. Tyler v. Hennepin Cnty., 598 U.S. 631, 638-39 (2023).

The New Jersey Supreme Court has held that the constitutional rule in Tyler applies to pending foreclosure actions in New Jersey. 257-261 20th Ave., Realty, LLC v. Roberto, 259 N.J. 417, 427-28 (2025). The Court in Roberto established three principles that are applicable to this case. First, the Court held that "property owners in New Jersey have a recognized property right to surplus equity." Id. at 443.

Second, the Court held that private lienholders who acquire a tax certificate and foreclose on a property pursuant to New Jersey's Tax Sale Law (TSL), N.J.S.A. 54:5-1 to -137, "may be considered state actors." Id. at 444.

Third, the Court clarified that "[t]he public character of a taking under the TSL is not diminished by the fact that property may be transferred directly to a private entity." Id. at 447 (citing Haw. Hous. Auth. v. Midkiff, 467 U.S. 229, 244 (1984)).

The application of the rules laid down in Tyler and Roberto will require further factual development on remand. Initially, we point out that the compensation issue is between the Holding Company and Hockey. The current record reflects that BSD, LLC is an innocent third party who purchased the property from Hockey. If BSD, LLC had no affiliated relationship with Hockey

or its predecessor, TL Six, then it would not have any responsibility for compensating the Holding Company for its surplus equity.

Instead, the Chancery court will have to hold a hearing or develop proofs to establish whether the Holding Company had surplus equity in the property beyond the redemption amount when the final judgment by default was entered on January 10, 2023. The court will then need to determine whether, considering all the equity and facts, the Holding Company is entitled to be paid the surplus equity.

In remanding the surplus equity issue, we note that this case has the added complication of the sale of the property to BSD, LLC. The net sale proceeds received by Hockey included the surplus equity. Consequently, the Chancery court will need to determine whether Hockey should pay the surplus equity to the Holding Company. That determination must be made even if the final judgment is left in place. If, on the other hand, the final judgment is vacated, the Chancery court will need to determine if BSD, LLC has claims against Hockey and the Holding Company.

Remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

19