**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3620-19

LEONARD KESSELMAN,

     Plaintiff-Appellant,

v.

SIDNEY KESSELMAN,
individually and as Trustee of
Kesselman Living Trust, and
TERRI ZIMMERMAN,
individually and as Trustee of
Kesselman Living Trust,

     Defendants-Respondents.

_____

     Argued November 30, 2021 – Decided March 2, 2022

     Before Judges Rothstadt and Natali.

     On appeal from the Superior Court of New Jersey, Chancery Division, Essex County, Docket No. C-000184-18.

     Robert J. Donaher argued the cause for appellant (Herold Law, PA, attorneys; Robert J. Donaher, of counsel and on the briefs).

Christine F. Marks argued the cause for respondents (Fox Rothschild, LLP, attorneys; Christine F. Marks, of counsel and on the brief).

PER CURIAM

In this ongoing intrafamily dispute, plaintiff Leonard Kesselman appeals from the Chancery Division's February 10, 2020 order granting summary judgment to the late Sidney Kesselman and his daughter, plaintiff's sister, Terri Zimmerman, in their individual capacities and as trustees of the Kesselman Living Trust (Family Trust). The Chancery judge granted the motion and dismissed the complaint based on the doctrines of res judicata and collateral estoppel, after the judge concluded plaintiff's claims in this case had been disposed of in an earlier New York litigation. Plaintiff also appeals from the same judge's May 5, 2020 denial of his motion for reconsideration.

On appeal, plaintiff argues his claims were not barred by res judicata or collateral estoppel, "preclusion" was not applicable under the United States Constitution's "Full Faith and Credit" clause, and the New York court's determination should not be given "preclusive effect under the doctrine of fraudulent concealment."

We affirm the two orders under appeal, except as to one specific claim made by plaintiff in his complaint in this action. We do so because we conclude

the New York judgment precludes plaintiff from re-litigating his claims about his sister's alleged undue influence and its impact on the validity of 2002 and 2014 amendments to the Family Trust and about the enforceability of an alleged intrafamily agreement. However, it did not preclude plaintiff from pursuing claims relating to the validity of a 2015 amendment to the Family Trust, including his claims of undue influence regarding that amendment.

I.

To give context to our decision, we begin with a detailed discussion of the origins of the Family Trust and the parties' litigations, all viewed in a light most favorable to plaintiff as the party opposing summary judgment.

The Family, the Business, and the Chelsea Building

As already noted, Leonard and Terri[1] are the only children of the late Sidney Kesselman and his late wife Evelyn Kesselman. In the early 1950s, Sidney opened a paint and hardware store in New York, known as London Paint. In the mid-1960s, Sidney purchased a building on Nineth Avenue in Manhattan (the Chelsea building) and began operating London Paint from its premises.

_____

[1] We refer to the parties by their first names to avoid any confusion caused by their common last name. No disrespect is intended.

Leonard began working at London Paint as a child and continued to work in the business as an adult. In 1983, upon Sidney's retirement and Sidney and Evelyn's purchase of a home in Florida, Leonard took control of the business, although it was disputed what Leonard paid to acquire the business, if anything.

It was undisputed, however, that over the years London Paint paid a rent that was significantly below the market rate. Between 1983 and 2003, London Paint paid rent of $1,000 per month. In 2003, there were two rent increases, one to $2,000 per month and a second to $3000 per month.

Leonard claimed a written ten-year lease covered the period from 1984 to 1994, but the record does not contain any written lease for any period. At most, the record contains a letter dated October 13, 1997, three years after the alleged written lease ended, addressed from Sidney and Evelyn to Leonard and Terri and executed by all four individuals, which stated the following:

> This letter will acknowledge the agreement between [Sidney], [Evelyn], [Leonard] and [Terri] regarding the [Chelsea] building owned by Sidney and Evelyn . . . .
>
> Should Sidney or Evelyn be in possession of the [Chelsea] Building . . . or as an entity owned by the survivor at the time of the survivor's demise, it is agreed that London Paint Company, Inc. or any other company or business occupying the store or any other rental space in the Building, will pay the "fair rental value" in exchange for occupying such space. The fair rental value shall be determined by a licensed real estate agent

4

knowledgeable in rentals for that area of Manhattan. If Leonard and Terri cannot agree on a real estate agent, each of Leonard and Terri shall select one and if they cannot agree on the fair rental value, both real estate agents shall select a third licensed real estate agent who shall determine the fair rental value. Also, the Building shall be managed by both Leonard and Terri.

According to Leonard, after his father's stroke in 2012, a dispute arose between Leonard and Sidney about Leonard's interest in the building and the rent to be paid by London Paint. Leonard contended he continued to operate London Paint out of the Chelsea building pursuant to a family agreement, and, in reliance upon that agreement, he maintained and improved the building to the benefit of the entire family, with building profits paid to Sidney and Evelyn. Leonard claimed among the alleged terms of the family agreement were: an understanding that London Paint could continue as a tenant of the Chelsea building, paying an agreed-upon, below-market-rate rent until the deaths of Sidney and Evelyn; during which Leonard would be paid $450 per month to manage and maintain the property; and, upon the deaths of Sidney and Evelyn, the building would be bequeathed in equal shares to Leonard and Terri, at which time the siblings would agree upon a fair market rent for the business.

However, Sidney rejected Leonard's allegations about a family agreement. He denied Leonard had any right to continued occupancy of the Chelsea

5

building, and stated Leonard refused to pay an increased rental amount despite repeated requests that he do so. He claimed Leonard was "a liar," who over the years had "gone to great lengths to try to cheat and manipulate my wife and me out of our money for his financial benefit." And, he stated that he retained full control over how he would bequeath his estate and that there were no promises of a specific inheritance amount or percentage to be given to Leonard.

Thereafter, the record reflects that in 2015, three years later, Sidney and Leonard attempted to negotiate London Paint's rent, with Sidney demanding $11,000 per month, which was still well below the market rate. When Leonard refused to pay that amount, Sidney commenced summary proceedings in a New York action to terminate London Paint's tenancy and change management of the building. In response, as more fully discussed infra, Leonard commenced his own lawsuit in New York.

The Trust, and Evelyn and Sidney's Deaths

A week prior to the October 13, 1997 letter discussed above, Sidney and Evelyn established the Family Trust. Later, Sidney and Evelyn transferred ownership of the Chelsea building to the trust.

The record does not include a copy of the 1997 version of the revocable trust, however it contains a copy of the May 21, 2002 amendment (2002

A-3620-19

Amendment). Under the 2002 Amendment, upon the deaths of Sidney and Evelyn, the Chelsea building was to be distributed sixty percent to Terri and forty percent to Leonard, as tenants in common. Also, upon the death of either spouse and based upon the consent of the surviving trustor, Leonard and Terri were to share management responsibilities for the building. Finally, upon the deaths of both Sidney and Evelyn, all tenants, including London Paint, would be required to pay rent at a minimum of fair market value if they were not already doing so.

In 2012, Sidney suffered a stroke at the age of ninety-one. Two years later, on November 5, 2014, Sidney and Evelyn amended the trust for a second time through a First Restatement of the Family Trust (2014 Amendment). Among other things, the 2014 Amendment provided that: Sidney could act independently, making decisions and binding the trust without the consent of Evelyn; Sidney was named as Evelyn's successor trustee and Terri as Sidney's successor trustee; and upon the deaths of Sidney and Evelyn, the Chelsea building was to be distributed eighty percent to Terri and twenty percent to Leonard, with London Paint's rent being increased to fair market rental value, Terri would receive Sidney and Evelyn's property in Florida, and any remainder of the trust would be shared equally by Leonard and Terri.

A-3620-19

In August 2015, while the Sidney's tenancy action and Leonard's New York actions were pending, the trust was amended for a third time (2015 Amendment), such that Leonard's interest in the building was decreased to zero, and Terri's interest was increased to 100 percent. However, no copy of the 2015 Amendment is included in the record, and Leonard did not learn about the amendment until after he filed this action in New Jersey in 2018.

While the New York litigations were pending, in September 2017, Evelyn died; and while this action was pending, in 2019, Sidney died.

The New York Litigation

Prior to Sidney and Evelyn's passing, as already noted, in early 2015, they filed an action in New York to terminate London Paint's tenancy in the Chelsea building and Leonard filed a complaint on his behalf and on behalf of London Paint. Leonard named Sidney and Evelyn as defendants in their capacity as trustees of the Family Trust, and, along with Terri, individually.

Leonard's New York complaint asserted causes of action for: (1) specific performance of the alleged family agreements; (2) declaratory judgment that the alleged family agreements are valid and enforceable; (3) equitable estoppel; (4) preliminary and permanent injunction; and (5) breach of contract. Essentially, Leonard demanded enforcement of alleged family agreements and

8

understandings that, during Sidney's and Evelyn's lifetimes, London Paint would be permitted to operate from the Chelsea building at an affordable, below market rent and Leonard would be paid $450 per month to manage the building on his parents' behalf, and that, upon Sidney and Evelyn's death, Leonard and Terri each would receive fifty percent shares of the Chelsea building.

Leonard further alleged Terri instigated Sidney's breaches of the alleged family agreements. In particular, he asserted that, after Sidney's stroke in 2012, Terri exerted undue influence over Sidney and caused him to: alter the trust such that Terri would receive more than fifty percent of Sidney and Evelyn's estate upon their deaths; demand that plaintiffs pay unaffordable, market-rate rent for occupancy of the Chelsea building; commence eviction proceedings to remove plaintiffs from the building; and change the management of the building. Finally, Leonard asserted these changes were made without notice to or consent from Evelyn, who served as co-trustee of the trust and who had equal authority with respect to ownership and control of the building.

All three defendants filed answers and affirmative defenses, denying that the plaintiffs had a right to the relief sought, with Sidney and Terri represented by separate counsel from Evelyn.

A-3620-19

In addition to the complaint, Leonard filed a motion in the New York action for a preliminary injunction, to enjoin and restrain any landlord-tenant proceedings commenced by Sidney. On July 28, 2015, the New York court granted Leonard a preliminary injunction and stayed the summary tenancy proceeding. The court did so, because "the issues [were] complex and the parties intensely contest[ed] the facts." That is, the litigation involved "heavily contested familial issues" and was "not a simple landlord-tenant matter as it involve[s] issues of undue influence and mental capacity." To resolve the matter, the court determined it "must examine the relationship between Terri and her parents in order to assess whether Terri has unduly influenced her parents." Afterward, Sidney and Terri filed an unsuccessful appeal from the stay order.[2]

In the meantime, in September 2015, Leonard filed a motion for leave to file an amended complaint to assert a claim for declaratory judgment that the 2014 Amendment was invalid and unenforceable due to Sidney and Evelyn's lack of mental capacity and Terri's undue influence. Terri and her parents opposed the motion and they filed a cross-motion for summary judgment, which

---

[2] On April 28, 2016, a New York appellate court upheld the preliminary injunction order, but remanded for the court to re-set the amount of the plaintiffs' undertaking upon receipt of competent evidence of the fair market rent for the commercial space.

A-3620-19

Leonard opposed. At that time, no discovery was taken in the New York litigation, although Leonard had served discovery requests, but his family did not respond.

Despite there being no discovery, Terri and her parents nevertheless argued that summary judgment was appropriate because the discovery requests were not related to the real estate claims asserted in the complaint, which were premised upon the alleged family agreements and were barred by the statute of frauds. Rather, the discovery requests related to Leonard's proposed amended complaint, that is, "Sidney and Evelyn['s] mental capacity and Terri['s] alleged influence over them," and the fact that Leonard was not being bequeathed an equal share of his parents' assets upon their death.

On June 24, 2016, the New York trial court granted the summary judgment motion and denied Leonard's motion for leave to amend the complaint. In its decision, the court noted the parties did not complete discovery. Nevertheless, the court found summary judgment was appropriate because: the alleged family agreements were neither valid nor enforceable; London Paint's month-to-month tenancy could be terminated by the landlord, the Family Trust; and Leonard did not have a vested fifty percent interest in the Chelsea building.

A-3620-19

More specifically, the court found the alleged family agreement was unenforceable because it was indefinite, vague, ambiguous, and uncertain as to the amount of rent to be charged and constituted "nothing more than an unenforceable agreement to agree." Moreover, the alleged oral agreements on rent and the distribution of the building upon Sidney and Evelyn's deaths were barred by the statute of frauds.

Rejecting Leonard's equitable claim of partial performance, the court noted the improvements Leonard made to the building were made in 1973, before he acquired London Paint, and in 1989, during the existence of a written lease. Therefore, they were not related to an alleged oral agreement, and were "as likely explainable" by the benefit London Paint received from the improvements. Similarly, Leonard's decision to operate London Paint in the Chelsea building was not unequivocally related to an alleged oral agreement that Leonard would receive fifty percent of the building upon his parents' demise, as it was equally explainable by the below-market rent paid by London Paint and the payment Leonard received to manage the building.

The court also considered Leonard's claims of undue influence by Terri, and lack of capacity on the part of Sidney and Evelyn and rejected them. The court stated:

12

This case can be resolved by answering one question: is there a valid, enforceable agreement between the family members as to London Paint's commercial tenancy and Leonard's interest in the [Chelsea] Building upon his parents' demise? The answer, as the record reveals, is no.

Thus:

In the absence of an enforceable agreement as to London Paint's tenancy, there is no evidence that Terri had a motive to unduly influence Sidney and Evelyn to change such agreement, and Leonard cannot meet the burden of proof he has on this issue. Indeed, under the [2014 Amendment], Sidney may act unilaterally on behalf of the [Family] Trust in matters affecting Trust property, and he did so. The record is devoid of evidence that Sidney lacked capacity when, during rent negotiations in winter 2015, he demanded an increase in London Paint's rent to $11,000 per month, and, upon not reaching an agreement, served the [t]hirty-[d]ay [n]otice. Leonard's advanced age, ipso facto, does not render him incapacitated, and, to this [c]ourt's knowledge, there is no authority to support such conclusion.

Moreover, on this record, as a whole and as to the precise circumstances surrounding the Trust amendments pursuant to which Terri received a greater future interest in the Building, there is no evidence from which an inference of undue influence reasonably could be drawn. Sidney and Evelyn were, and are, well within their rights to revoke, partially or completely, any bequests to Leonard in the Trust, and to increase Terri's future interest in the Building, as they have done. People may freely dispose of their property as they see fit and disinherit their children for any or no reason. On this record, there is no evidence (or even an allegation)

13

that Sidney and Evelyn lacked capacity in May of 2002[,] when they entered into the First Amended Trust, reducing Leonard's future interest in the Building to [forty percent]. Similarly, the record is devoid of evidence substantiating Leonard's claim that Sidney and Evelyn lacked capacity in November of 2014 when they entered into the [2014 Amendment], further reducing Leonard's interest to [twenty percent]. Rather, the record shows that Sidney and Evelyn knowingly, and of their own free will, amended the Trust in May of 2002 and again in November of 2014. Contrary to Leonard's argument, Sidney's change of mind, in and of itself, does not constitute undue influence by Terri. Equally unavailing is Leonard's reliance on Evelyn's January 29, 2015 affidavit to challenge her capacity in mid-November 2014. The affidavit, notarized outside of New York State, is inadmissible as it lacks a certificate of conformity pursuant to CPLR 2309(c), and the submission of such certificate on reply does not cure the defect. Additionally, the record demonstrates that Evelyn was not removed as Co-Trustee of the Trust and that Sidney is authorized to act unilaterally on behalf of the Trust to increase London Paint's rent. Indeed, by affidavit dated May 14, 2015, Evelyn disavowed the contents of her January 29, 2015 affidavit.

The Court rejects Leonard's contention that the "drastic" change in his future interest in the Building and Sidney's demand for increased monthly rent is "alarming" and raises the specter of undue influence. The record demonstrates that the changes to Leonard's interest in the Building have been occurring over time, not drastically or all of a sudden. Rather, Leonard's insistence that London Paint should pay only $3,000 per month rent in a market which commands something in the order of $17,500 per month rent, at a time when his elderly parents claim financial distress, and after he

14

enjoyed $2.3 million dollars in rent savings, is unavailing. Accordingly, this [c]ourt finds that Leonard's claims of undue influence and incapacity are without merit as a matter of law, which provides an additional ground for dismissal of plaintiffs' specific performance, and other, causes of action.

Finally, as for the plaintiffs' motion for leave to amend the complaint, the court stated:

Plaintiff's motion to amend the complaint is denied as the original complaint has been dismissed, and the causes of action in the proposed amended complaint are the same as those pleaded in the original complaint, except for the new cause of action respecting the [2014 Amendment]. On the merits, the new allegations relating to the [2014 Amendment] and Terri's undue influence are conclusory and without merit, for the reasons set forth above.

Leonard appealed from the grant of summary judgment and the denial of the motion for leave to amend the complaint.[3] On February 1, 2018, the New

---

[3] Leonard argued the trial court erred in making findings of fact regarding Sidney and Evelyn's mental capacity and Terri's undue influence because no discovery had been taken, and at the risk of future claims about the validity and enforceability of the trust amendments being barred under the doctrines of res judicata and collateral estoppel. Terri and her parents responded that the issues of undue influence and incapacity were irrelevant to whether the complaint was properly dismissed because the alleged family agreements and rental agreements were neither valid nor enforceable. Alternatively, they argued Leonard's allegations of lack of capacity, and undue influence were unfounded, based upon conjecture, and contradicted by evidence in the record. They also contended

15

York appellate court affirmed. London Paint & Wallpaper Co. v. Kesselman, 70 N.Y.S.3d 476 (App. Div. 2018). In its opinion, that court concluded, in pertinent part: Terri and her parents "demonstrated as a matter of law that [Leonard] cannot prove that . . . Terri . . . unduly influenced her parents to revoke, breach, or otherwise fail to perform under these unenforceable [family] agreements." Id. at 477. With respect to the denial of Leonard's proposed amendment to the complaint, the court stated his "proposed amendment to the complaint, which alleges Terri's undue influence with respect to the 2014 [Amendment], is 'palpably insufficient' given [his] inability to allege facts showing her actual exercise of such influence." Ibid. (citations omitted).

The New Jersey Litigation

After the New York appeal, on October 18, 2018, Leonard filed this action. As noted, by that time, Evelyn had been gone for about a year.

In this action, Leonard reiterated and expounded upon the claims he made in the New York litigation about the alleged family agreements and Terri's undue influence upon Sidney after his stroke in 2012. Also, he made new allegations, including that Sidney promised to transfer to Leonard a majority, sixty percent

---

Leonard's motion to amend the complaint was properly denied as moot upon the granting of summary judgment and because the proposed cause of action was without merit.

16

interest in the Chelsea building, upon the deaths of his parents, in exchange for Leonard's lifelong personal and professional commitment to continue operating London Paint out of the Chelsea building. Additionally, while his undue influence allegations focused primarily upon the 2014 Amendment, he also asserted the "purported" 2002 Amendment was "fraudulent or fictitious or otherwise legally insufficient and invalid," and "manufactured, created or undertaken without Evelyn's knowledge or informed consent, and . . . the product of Terri's fraudulent actions or undue influence."

Based upon his factual allegations, Leonard asserted causes of action for: (1) declaratory judgment affirming his right to fifty percent of the trust proceeds in accordance with the 1997 version of the trust; (2) reformation or rescission of the trust such that he receives fifty percent of the trust proceeds; (3) undue influence on the part of Terri over Sidney and/or Evelyn, and Sidney over Evelyn, rendering the trust amendments null and void; (4) breach of the original trust agreement through the nature and effect of the modifications to the original trust; (5) equitable fraud; and (6) breach of fiduciary duty.

Sidney and Terri filed an answer, denying liability and asserting defenses, including res judicata and collateral estoppel. Also, they moved to quash a subpoena Leonard served upon Sidney and Evelyn's New Jersey estate counsel.

In July 2019, Sidney and Terri moved for summary judgment, arguing that this action was precluded by the judgment in the New York litigation, under the doctrines of res judicata and collateral estoppel. Leonard opposed the motion. While the motions were pending, Sidney passed away.

The Chancery judge heard arguments on the motions on October 15, 2019, at which time he requested additional documents, including the pleadings and briefs from the New York action, and further briefing. After submissions were made, he resumed oral argument on February 6, 2020. Four days later, the judge issued his order granting summary judgment and dismissing the complaint, supported by a comprehensive twenty-nine-page written decision.

In his decision, the judge applied New York law and held the New Jersey litigation was precluded by the judgment in the previous New York litigation, wherein both the trial and appellate courts rejected as being without merit and an evidential basis Leonard's claims that Terri had exerted undue influence over Sidney and Evelyn and that Sidney and Evelyn lacked capacity when they amended the trust and in 2015 when Sidney engaged in rent negotiations and commenced the eviction proceedings. The judge identified, from numerous specific paragraphs in the New York pleadings and the appellate court's opinion,

multiple assertions made by Leonard in the earlier litigation about Terri's undue influence and the 2002 and 2004 Amendments. The judge found:

> The New Jersey litigation, including timeframes, issues, claims, pleadings and arguments are identical, i.e., Evelyn and Sidney's mental capacity and Terri's undue influence to the allegations in the New York litigation. Moreover, the New York trial and Appellate Division determinations are decisive of the present action. This court undertook a review of the New York Litigation pleadings, motions, brief, and opinions and compared them with those in the New Jersey Litigation and finds this determination inescapable.

The judge further found "Leonard had a full and fair opportunity to contest the prior determinations," on both the summary judgment motion and the motion to amend the pleadings, and the case was dismissed on the merits.

Leonard moved for reconsideration, and the judge heard argument on April 24, 2020. By opinion and order dated May 5, 2020, the judge agreed to reconsider his prior ruling, but, upon reconsideration, denied Leonard's requested relief to vacate the February 10, 2020 order. The judge reiterated his reasons for granting summary judgment and rejected Leonard's claim that Terri committed a fraud on the New York court by not revealing the 2015 Amendment. This appeal followed.

## II.

### A.

We review a trial court's grant of summary judgment de novo, "applying the same standard as the trial court." State v. Anderson, 248 N.J. 53, 67 (2021) (quoting Woytas v. Greenwood Tree Experts, Inc., 237 N.J. 501, 511 (2019)). "By that standard, summary judgment should be granted 'when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law."'" Woytas, 237 N.J. at 511 (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 528-29 (1995)).

The questions presented in this appeal implicate only a question of law: whether issue preclusion under res judicata and collateral estoppel were applicable to Leonard's complaint. See Walker v. Choudhary, 425 N.J. Super. 135, 151 (App. Div. 2012). Therefore, our review of the court's rulings on that issue here is de novo, giving no deference to the trial court's legal conclusions. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

B.

Here, we are asked to determine the preclusive effect of a foreign judgment, thereby implicating the Constitution's full faith and credit clause, which states that:  "Full Faith and Credit shall be given in each State to the . . .

Judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such . . . Proceedings shall be proved, and the Effect thereof." U.S. Const. art. IV, § 1; see also 28 U.S.C. § 1738 (providing that properly authenticated judicial proceedings of any state court "shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken").

"The full faith and credit doctrine is essential to our system of federalism, a system comprised of fifty different states, each equal to the other and each with its own distinctive judicial system." Simmermon v. Dryvit Sys., Inc., 196 N.J. 316, 329 (2008). "Because the doctrine recognizes that we are one nation, not fifty principalities, respect for the judgments entered by the court of a sister state is critical to avoid the type of divisive parochialism that breeds duplicative litigation and waste of judicial resources." Id. at 329-30. "Thus, any judgment properly executed in a foreign state, which complies with the requirements of the due process clause is entitled to full faith and credit in New Jersey." Ewing Oil, Inc. v. John T. Burnett, Inc., 441 N.J. Super. 251, 259 (App. Div. 2015); see also Baker v. Gen. Motors Corp., 522 U.S. 222, 233 (1998) ("A final judgment in one State, if rendered by a court with adjudicatory authority over the subject matter and persons governed by the judgment, qualifies for recognition

throughout the land."); Kremer v. Chem. Constr. Corp., 456 U.S. 461, 480-83 (1982) (recognizing that the due process condition requires only minimal due process be provided and that full faith and credit is not required when there has been a denial of due process in the foreign state's proceedings). Where due process considerations are not challenged, we may not deny preclusive effect to a foreign judgment simply because we believe the foreign court erred in its rulings. See Velasquez v. Franz, 123 N.J. 498, 511-12 (1991). However, a foreign judgment procured by fraud or misrepresentation is not entitled to preclusive effect. Simmermon, 196 N.J. at 331.

As to defenses raised in a foreign action, the full faith and credit clause requires we give the New York judgment the same respect it would receive in a New York court. 28 U.S.C. § 1738; Durfee v. Duke, 375 U.S. 106, 109 (1963); Simmermon, 196 N.J. at 330. We must apply New York's law on res judicata and collateral estoppel because "the binding effect of a judgment is determined by the law of the jurisdiction that rendered it." Watkins v. Resorts Int'l Hotel & Casino, Inc., 124 N.J. 398, 411 (1991); Restatement (Second) of Conflict of Laws § 95 (Am. Law Inst. 1971).

That being said, the full faith and credit clause is less exacting with respect to laws than it is with respect to judgments. Baker, 522 U.S. at 232. Thus, the

22

full faith and credit clause does not govern a choice of law analysis or require a state court to apply the statutes or common law of another state where to do so would violate the public policy of the forum state. Id. at 232-33; e.g., McDonnell v. Illinois, 163 N.J. 298, 299 (2000).

New York and New Jersey law are consistent on the issues of res judicata and collateral estoppel. Therefore, the result would be the same regardless of which law is applied. Under both states' law, the doctrine of res judicata bars future actions between the same parties on the same cause of action. Simmons v. Trans Express, Inc., 37 N.Y.3d 107, 111 (2021); Velasquez, 123 N.J. at 505. The party seeking to apply the doctrine bears the burden of proof. Watts v. Swiss Bank Corp., 27 N.Y.2d 270, 275 (1970); Sweeney v. Sweeney, 405 N.J. Super. 586, 598 (App. Div. 2009).

Both states follow a transactional analysis approach in deciding res judicata issues. Simmons, 37 N.Y.3d at 111; see Wadeer v. N.J. Mfrs. Ins. Co., 220 N.J. 591, 606 (2015). Under this approach, "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." Simmons, 37 N.Y.3d at 311 (emphasis omitted) (quoting O'Brien v. Syracuse, 54 N.Y.2d 353, 357 (1981)); Wadeer, 220 N.J. at 606

(2015). However, the New York Court of Appeals has cautioned that the doctrine of res judicata should not be applied so rigidly that it works an injustice and deprives a litigant of their day in court. Simmons, 37 N.Y.3d at 111-12.

Similarly, both states' application of the doctrine of collateral estoppel is narrower than res judicata. It prevents a party from relitigating any issue clearly raised in a prior action and decided against that party, whether the tribunals or the causes of action are the same. Simmons, 37 N.Y.3d at 112; Winters v. N. Hudson Reg'l Fire & Rescue, 212 N.J. 67, 85 (2012). Like res judicata, it is grounded in concepts of fairness and should not be rigidly applied if to do so would work an injustice. Simmons, 37 N.Y.3d at 112; Allen v. V & A Bros., Inc., 208 N.J. 114, 138 (2011).

The essential ingredients necessary to apply the doctrine include: (1) the issue in the second action is identical to an issue raised in the first action; (2) the issue was necessarily decided and material in the first action; and (3) the party to be precluded from relitigating the issue must have had a full and fair opportunity to litigate the issue in the first action. Simmons, 37 N.Y.3d at 112; Winters, 212 N.J. at 85; Restatement (Second) of Judgments § 27 (Am. Law Inst. 1982).

Under New York law, the proponent of collateral estoppel bears the burden of demonstrating that the issues in the two proceedings are identical, and the issues were decided by the prior tribunal, whereas the opponent bears the burden of establishing the absence of a full and fair opportunity to litigate the issue in the prior action or proceeding. Parker v. Blauvelt Volunteer Fire Co., 93 N.Y.2d 343, 349 (1999).

> A determination whether the first action or proceeding genuinely provided a full and fair opportunity requires consideration of "the 'realities of the [prior] litigation', including the context and other circumstances which . . . may have had the practical effect of discouraging or deterring a party from fully litigating the determination which is now asserted against him." Among the specific factors to be considered are the nature of the forum and the importance of the claim in the prior litigation, the incentive and initiative to litigate and the actual extent of litigation, the competence and expertise of counsel, the availability of new evidence, the differences in the applicable law and the foreseeability of future litigation.
>
> [Ryan v. N.Y. Tel. Co., 62 N.Y.2d 494, 501 (1984) (alteration and omission in original) (quoting New York v. Plevy, 52 N.Y.2d 58, 65 (1980)).]

New Jersey law is similar. For the doctrine of collateral estoppel to apply, the party asserting the doctrine must show:

> (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court

in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.

[Winters, 212 N.J. at 85 (quoting Olivieri v. Y.M.F. Carpet, Inc., 186 N.J. 511, 521 (2006)).]

Finally, under both New York and New Jersey law, rulings on both summary judgment motions and motions for leave to amend can have a preclusive effect on future litigation. See, e.g., Syncora Guar. Inc. v J.P. Morgan Sec., LLC, 970 N.Y.S.2d 526, 529-30 (App. Div. 2013); Velasquez, 123 N.J. at 506-08.

C.

Applying the doctrines of res judicata and collateral estoppel to the present case, the record reflects that in the New York litigation, Leonard sought enforcement of the alleged family agreement, which, according to Leonard, included Sidney and Evelyn's promise to bequest the Chelsea building equally to Leonard and Terri along with London Paint's tenancy in the Chelsea building. Leonard refers to the Family Trust, but not any amendments to it, although he alluded to rumored changes to "Sidney's estate plan."

Nevertheless, the validity of the 2014 Amendment was addressed in the New York litigation because, upon learning about the amendment, Leonard

moved for leave to amend the complaint to include a cause of action for declaratory judgment, seeking a declaration that the 2014 Amendment was void and unenforceable due to Sidney and Evelyn's lack of mental capacity and due to the undue influence exerted by Terri over them.

The validity of the 2002 and 2014 Amendments were addressed in the New York litigation also because Terri and her parents raised those amendments in opposition to Leonard's motion for leave to amend the complaint, and in support of their motion for summary judgment. Specifically, they relied, in part, on the two amendments to oppose Leonard's claim of an enforceable family agreement relating to the Chelsea building. They also used the 2002 Amendment to oppose Leonard's allegations that, after Sidney's stroke in 2012, Terri unduly influenced Sidney to breach the family agreement and that Sidney lacked the authority to terminate London Paint's tenancy because he did not have the approval of Evelyn, who had equal control over the building.

In granting summary judgment, the New York court declared the alleged family agreement and rental agreement were invalid and unenforceable under the statute of frauds, and rejected Leonard's claim of partial performance. In so doing, the court found no motive on Terri's part to unduly influence Sidney and Evelyn with respect to the alleged family and rental agreements because those

agreements were unenforceable. The court also noted that, under the 2014 Amendment, Sidney had authority to act unilaterally on behalf of the trust. And, the court found no evidence in the record that Sidney lacked capacity when he demanded an increase in London Paint's rent or that Sidney and Evelyn lacked capacity or were unduly influenced by Terri in connection with the 2002 and 2014 Amendments.

In denying Leonard's motion for leave to amend the complaint, the court noted the original complaint had been dismissed and, "[o]n the merits, the new allegations relating to the [2014 Amendment] and Terri's undue influence are conclusory and without merit" for the reasons stated in connection with the ruling on summary judgment.

Leonard appealed from that judgment, and the New York appellate court affirmed both the grant of summary judgment and the denial of the motion for leave to amend. The court found the plaintiffs could not prove that Terri unduly influenced Sidney and Evelyn in connection with the unenforceable family agreements, and no evidence to support Leonard's proposed claim that Terri unduly influenced Sidney and Evelyn in connection with the 2014 Amendment. London Paint, 70 N.Y.S.3d at 477.

On this record, the doctrines of res judicata and collateral estoppel precluded Leonard's New Jersey claims to void the 2002 Amendment and the 2014 Amendment. The New York and New Jersey litigations involved an identity of parties, as well as an identity of claims, issues, and relief sought. In addition, the New York litigation resulted in a final judgment in which the courts, as matter of necessity to resolve the summary judgment motion and the motion for leave to amend the complaint, determined the merits of those claims and issues.

Even if the New York courts erred in their rulings,[4] those errors do not warrant the denial of res judicata effect to the New York judgment. Simmons, 37 N.Y.3d at 111-12. Leonard chose to pursue his claims in New York, and he framed the issues to be resolved by the court, including his parents' promise to bequeath a fifty percent interest in the Chelsea building to him, their alleged mental incapacity, and Terri's alleged undue influence. Moreover, the New York court had jurisdiction over the parties and the claims pursued, which

---

[4] Given the fact sensitive inquiries relating to Sidney and Evelyn's mental capacities and Terri's alleged undue influence over her parents, and the lack of discovery on those issues, Leonard contends summary judgment in New York was not warranted. However, a subsequent suit in New Jersey is not a proper means for correcting an allegedly erroneous ruling from a foreign jurisdiction. Velasquez, 123 N.J. at 511-12.

related to a New York[5] property and Leonard received due process. He argued about the lack of discovery in both the trial and appellate courts and, on appeal in New York, he contended that affirmance of the trial court's judgment could result in future litigation about the trust amendments being barred under the doctrines of res judicata and collateral estoppel. The courts thoroughly heard and considered his arguments and ultimately rejected them, ruling against him on the merits.

That being said, it is undisputed the New York judgment did not address anything related to the Family Trust's 2015 Amendment. The 2015 Amendment was never raised by any party in the context of the New York litigation, and its validity was not ruled upon by the New York courts. At most, in the context of Leonard's leasehold claims, the New York trial court found no evidence that Sidney lacked capacity when he negotiated London Paint's rent in the winter of 2015, which did not result in an agreement.

---

[5] Leonard argues that, after the leasehold claims were dismissed, New York no longer had jurisdiction over claims relating to the validity of trust amendments because New York did not have "inherent jurisdiction" over such claims as New Jersey had a greater interest in the trust dispute than New York where all parties maintained residences in New Jersey, and the Family Trust was allegedly prepared by counsel in New Jersey.

A-3620-19

The New York judgment therefore cannot bar Leonard from pursuing his New Jersey claims to void the 2015 Amendment. The New York court's rulings as to the 2002 and 2014 Amendments are not dispositive of Sidney's mental capacity to amend the trust in 2015, or whether Terri exercised undue influence over Sidney with respect to the 2015 Amendment, because the amendment occurred at a different time and in a different context. See, e.g., In re Swertlow, 168 N.J. Super. 89, 93-95 (App. Div. 1979) (noting New Jersey hearing officer had authority to inquire into whether decedent's mental condition had improved since New York conservatorship proceeding, such that decedent was mentally competent to change his domicile).

The record reflects that in the New York litigation Sidney, Evelyn, and Terri were not forthcoming with information about the trust: they did not respond to Leonard's discovery requests; they made Leonard aware of the 2002 and 2014 trust amendments only in the context of their submission on motions; and they did not disclose any information about the 2015 Amendment. The record also reflects that Leonard first learned of the 2015 Amendment after he filed his October 2018 complaint in New Jersey. Therefore, Leonard could not have contested the validity of the 2015 Amendment in the context of the New York litigation, which ended with the appellate ruling on February 1, 2018; the

31

New York courts could not have ruled on that issue; and it would be unjust to deny Leonard an opportunity to contest that amendment in the present litigation. The doctrines of res judicata and collateral estoppel should not be applied to achieve such an unjust result.

Finally, we consider Leonard's claim that Sidney, Evelyn, and Terri's conduct in the New York litigation gave rise to their committing a fraud on the New York court based upon their failure to disclose the 2015 Amendment in the New York proceedings, which Leonard argues now that his disinheritance is material. To demonstrate fraud on court, "the nonoffending party must establish by clear and convincing evidence that the offending 'party acted knowingly in an attempt to hinder the factfinder's fair adjudication of case and his adversary's defense of the action'" and that the conduct concerns issues "central" to the case. CDR Créances S.A.S. v. Cohen, 23 N.Y.3d 307, 318, 320 (2014) (quoting McMunn v. Mem'l Sloan-Kettering Cancer Ctr., 191 F. Supp. 2d 440, 445 (S.D.N.Y. 2002)); Triffin v. Automatic Data Processing, Inc., 394 N.J. Super. 237, 251 (App. Div. 2007) (stating that fraud on court occurs when it is proven by clear and convincing evidence that party intentionally interfered with judicial system's ability to impartially adjudicate case by improperly influencing trier or

unfairly hampering opponent's presentation of claim or defense). We find no clear and convincing evidence of same in the record.

Under these circumstances, we affirm the order and judgments under appeal here, except regarding Leonard's claims relating to the 2015 Amendment, including allegations that Terri's undue influence, if any, caused Sidney to modify the Family Trust to Leonard's detriment. All other issues were correctly determined to be precluded by the New York judgment.

Affirmed in part; reversed and remanded in part for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION